# EXHIBIT A

Hearing Date: 8/15/2019 10:00 AM - 10:00 AM
Courtroom Number: 2410
Location: District 1 Court
    Cook County, IL

**12-Person Jury**

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

HARRY CHANNON and DAWN CHANNON, )
individually and on behalf of all others )
similarly situated, )
                      )
      *Plaintiffs,* )
                      )
         v. )
                      )
WESTWARD MANAGEMENT, INC., )
an Illinois Corporation, )
                      )
      *Defendant.* )

No. 2019CH04869

**JURY DEMAND**

### CLASS ACTION COMPLAINT

Plaintiffs HARRY CHANNON and DAWN CHANNON (the "Channons" or "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their counsel, Jeffrey C. Blumenthal Chartered and Greenswag & Associates, P.C., for this action against Defendant WESTWARD MANAGEMENT, INC., an Illinois Corporation ("Westward Management," "Westward" or "Defendant"), states as follows:

### INTRODUCTION

1.      Plaintiffs bring this suit on behalf of themselves and a similarly situated class of individuals who, when selling their condominium units, were effectively compelled to pay Westward Management's unreasonable and excessive fees to obtain copies of certain records that the Illinois Condominium Property Act (the "Condo Act" or "Act") requires condominium sellers to provide prospective buyers pursuant to Section 22.1 of the Act, 765 ILCS 605/1, *et seq.*

2.      Condominium sellers are statutorily required to obtain disclosure documents from their Condo Association Board of Managers or its managing agent, which, in this case is Westward, by paying them a reasonable fee for the actual costs of providing the documents. Condo sellers must then provide the documents to the prospective buyer.

1

FILED DATE: 4/16/2019 4:51 PM   2019CH04559

3.      Condo sellers are thus beholden to property management companies who have complete control over disclosure documents by virtue of their management contracts or agreements with Condo Associations.

4.      Westward allegedly uses its position of entrustment with disclosure documents as leverage to abuse condo sellers who are often involved in time-sensitive real estate transactions and have no other reasonable option but to pay whatever fee Westward chooses to charge, or risk their own potential liability under the Condo Act by not providing the documents to prospective buyers at all, or providing deficient disclosure documents.

5.      Disclosure documents under Section 22.1 of the Illinois Condominium Property Act (the "Act") are financial statements setting forth various aspects of the Association's financial condition and other statements related to the unit, which include: (1) current and anticipated capital expenditures of the association, (2) amount of assets held in the association's reserve fund, (3) insurance coverage requirements, (4) liens on the unit, (5) improvements or alterations made to the unit, (6) amounts of unpaid assessment fees and other charges due, (7) statement of the status of any pending lawsuit or judgments to which the association is a party, (8) governing documents of the association such as the declaration, bylaws, and rules and regulations, and (9) the identity and mailing address of the association's agent specifically designated to receive notices.

6.      Westward is the property management agent for the Kenmore Club Condominium Association ("Kenmore Club" or "the Association").

7.      Westward is Kenmore Club's agent in connection with the financial management and record keeping of documents described in Section 22.1 of the Act. Westward is also the Association's designated agent in connection with the resale and transfer of ownership of a condominium unit within the Association's Property, which includes the process, procedures, and

documents described under Section 22.1 "Resales; disclosures; fees."

8. Like many other Condo Associations in Illinois, Kenmore Club's resale process requires condo sellers, such as Plaintiffs, to notify the Association's managing agent, in this case Westward Management, of the intent to sell their condo unit. The seller is then required to request directly, and must obtain disclosure documents, from their Association's "other officer as is specifically designated [to] furnish [Section 22.1 disclosure documents] when requested to do so in writing and within 30 days of the request." 765 ILCS 605/22/1(b).

9. The Association is not able to provide the disclosure documents to the condo seller. The Association's designated agent, Westward, manages disclosure documents as part of the agent's professional financial management services to the Association. (A copy of Westward's website detailing financial management services it offers to Condo Associations is attached as Exhibit A).

10. Section 22.1 is not only about providing documents; it is about the *management* of disclosure documents. Such management involves an ongoing process and professional expertise in the requirements of the Condo Act and the financial management, record keeping, stability, and security of the Condominium Association.

11. Condo owners are not required to be CPA's, lawyers, maintenance repair persons, landscapers, or real estate sales experts to be a Board Manager. The lack of knowledge, ability, and/or expertise in the various duties, such as financial management of the documents described in Section 22.1(a)(1)-(9) of the Act, does not preclude a condo owner from serving on the Board because he or she can still comply with their duties under the Act by retaining professionals, such as Westward, who do have the skills, knowledge, and expertise necessary to assist the Board in complying with their duties under the Condo Act. 765 ILCS 605/18(a)(5).

3

FILED DATE: 4/16/2019 4:51 PM   2019CH04859

12.     For example, the Association and its Board of Managers have the duty to physically maintain the common areas of the property. 765 ILCS 605/18.4(a).  If the Board Manager was elderly or disabled and could not physically comply with the duty to repair, he or she be would not be excluded from consideration as a Board Member due to his limitations because the Association can contract with professional services to satisfy that duty, such as Kenmore Club did here when it retained Westward to manage and provide disclosure documents to condo sellers who so demand.

13.     When an agent, such as Westward, does not comply with the duties of his principal-Association, it does not automatically infer that the Association Board of Managers is second in line to carry out the obligation. The Kenmore Club Board of Managers still has no knowledge or *ability* to carry out this duty.  It is not reasonable to expect that if the Association's designated agent for maintenance services refuses to fix the leaky roof in the common area of the Property, Board Managers must then become professional roofers to comply with their duties under the Condo Act.

14.     In this case, the Association contracted with Westward to comply with the duties set out under Section 22.1, but Westward has not complied with the duty to charge only a reasonable fee for out-of-pocket costs for providing disclosure documents under Section 22.1(c), 765 ILCS 605/22.1(c). Just because Westward does not want to comply with the reasonable fee requirement, does not mean that the Association Board Managers are any more equipped to manage Section 22.1 documents than they were when Westward was first retained.  Without the ability to *manage* the documents, the Board Managers are unable to provide them to condo sellers with any degree of accuracy.

4

FILED DATE: 2/15/2019 4:51 PM 2019CH04869

15.     Custom and practice in the condo industry is to contact the management agent of the Association, not the Board of Managers. Even if the seller were to first request the documents directly from the Association, the Association would direct the seller to Westward to obtain disclosure documents. Requiring the seller to first request disclosure documents from the Association, only to be directed to Westward, creates an unnecessary step and exchange of hands at the tail-end of a time-sensitive real estate transaction, and may cause sellers to risk losing a sale if a potential buyer pulls out of a deal while waiting for disclosure documents.

16.     Further, it is a question of statutory interpretation whether under Section 22.1(a) the Association is able to demand disclosure documents from Westward on the seller's behalf. Section 22.1 of the Condo Act only mentions the unit owner as having a duty to *demand* and *obtain* disclosure documents on behalf of the prospective buyer. Whereas the Board of Managers' duty under Sections 22.1 (a) and (b) is to *provide* the documents to the unit owner. 765 ILCS 605/22.1(a), (b).

17.     Requiring the Association to demand documents on the seller's (or prospective buyer's) behalf opens the Association to potential liability to the prospective buyer, whereas Section 22.1 has been interpreted to limit liability between the seller and prospective buyer regarding the accuracy, completeness, and providing of disclosure documents.

18.     There is little value to retaining management companies that expose the Association, such as Kenmore Club and its Board of Managers, to liability because of non-compliance and unscrupulous business decisions regarding the very law regulating the principal Association and its Board of Managers. The value of management companies, such as Westward, *is* their compliance services with the Condo Act, and necessarily requires strict adherence to the

FILED DATE: 4/15/2019 4:51 PM   2019CH04659

duties, obligations, and limitations governing Condo Associations, such as Kenmore Club and their Board Managers, under Section 22.1 of the Act.

19. Alternatively, the seller may complain to the Association about the excessive and unreasonable fees charged by Westward prior to closing, yet the Association is still in no position to provide the documents to the seller without first obtaining them from Westward. Assuming the Association is even able to demand the documents from Westward on the seller's behalf (and assuming Westward would comply with the Association's demand), the fee Westward would charge the Association is the same fee it charges condo sellers—unreasonable and beyond "direct out-of-pocket costs." The Association is therefore forced to either potentially violate Section 22.1's "reasonable fee" restriction by recouping Westward's unreasonable fee from the condo seller, or forced to waste the Association's assets, thus breaching their duty of care, by not recouping Westward's fee at all every time a condo owner sells their unit to comply with their statutory duty under the Condo Act to provide disclosure documents to the seller. 765 ILCS 605/22.1(b). In either scenario, the seller's transaction is threatened, the seller is harmed, and the Association is harmed either financially or through expanded potential liability from various parties.

20. Westward is compensated for assuming a number of duties—including managing and providing disclosure documents to condo sellers. The management contract is between the Association and Westward—not between individual condo owners and Westward. Westward is using its' assumed duty to manage and provide documents to sellers as an opportunity to "shake down" individual condo sellers for profit rather than bargaining for its benefits with the Association's Board of Managers during the formation stage of the management contract or agreement.

6

FILED DATE: 7/16/2019 4:51 PM 2019CH04869

21.    The Association does not manage or provide Section 22.1 disclosure documents to condo sellers. Westward assumed the duty and obligation, among others, to manage documents identified in Section 22.1 as the Agent for the Association. Westward is the Association's "other officer as is specifically designated" under Section 22.1(b) and charged with the statutory responsibility to both *manage* and *provide* disclosure documents to condo sellers upon demand.

22.    Although Section 22.1(c) of the Act provides only that "[a] reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit-seller for providing such information," Westward charges condo sellers excessive and unreasonable fees to obtain disclosure documents under the guise that it has authority to do so via its contract or management agreement with the Association and/or under Section 22.1(c) of the Act.

23.    At most, the Association permits Westward to collect its reasonable fee for providing the documents to condo sellers—not impose their own fee. This is because agents, like Westward, are only able to charge unit owners a fee if it is on behalf of the Association and with authorization either from the Association Board of Managers and/or the Condo Act.

24.    On information and belief, the only fees Westward is authorized to charge and receive from condo owners are those in connection with their services to the Association under the terms of their contract or management agreement with the Association.

25.    On information and belief, the Association did not authorize Westward to charge condo sellers excessive and unreasonable fees to provide condo sellers disclosure documents held in their care and custody.

26.    Section 22.1(c) does not authorize management agents, such as Westward, to charge a fee for providing disclosure documents to condo sellers. Section 22.1(b) only permits the

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

designated agent to provide the documents, but does not state that the designated agent may charge any fee whatsoever. 765 ILCS 605/22.1(c). If Westward is not providing these documents and charging on behalf of the Association (not giving the Association any of the fees it collected from unit sellers), Westward is then abusing the Association's property (the documents) to make a profit outside of the management contract or agreement, and in violation of Section 22.1(c).

27. By virtue of its management contract or agreements with the Association, Westward exercises dominion and control over the Association's disclosure documents and does not disclose their "actual cost" of providing the documents to condo sellers. Thus, on information and belief, Westward is only able to provide disclosure documents to condo sellers precisely because it is an Agent of the Association. Westward assumed the duty to manage the documents identified in Sections 22.1(a)(1)-(9) under its contract or agreement with the Association, and therefore, possess and controls the Association's disclosure documents.

28. For the most part, Westward can provide disclosure documents immediately to the unit seller because they are stored in an electronic database managed and controlled by Westward.

29. Westward sets pre-determined fees for "each" 22.1 disclosure item—regardless of the length of the document or method of delivery.

30. Westward does not itemize its charges, or otherwise state the basis for how it determined the amount charged for these documents.

31. Plaintiffs bring this action against Westward to recover the unreasonable fees paid which Westward unlawfully charged Plaintiffs and other similarly situated sellers in violation of the Section 22.1(c) of the Condo Act. Plaintiffs seek interest, attorney's fees and costs owed to them and other similarly situated persons.

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

32.    As set forth below, Westward's predatory practice of price gouging captive condo sellers with unreasonable fees to obtain access to disclosure documents they are required by statute to provide prospective buyers to close on the sale of their unit or risk legal liability for noncompliance with their duty under the statute, gives rise to Plaintiff and the Class' claims alleged herein.

## JURISDICTION AND VENUE

33.    Jurisdiction over Defendant is proper under 735 ILCS 5/2-209(a)(1) (transaction of any business within the State) and 735 ILCS 5/2-209(b)(3) (corporation organized under the laws of this State).

34.    Venue is proper in this Court pursuant to 735 ILCS 5/2-101, because the transaction(s), or a substantial part thereof, occurred in Cook County and Defendant an Illinois corporation doing business in Cook County. 735 ILCS 5/2-102(a).

## PARTIES

35.    Plaintiffs are natural persons and citizens of the State of Illinois at all times relevant to the events detailed herein.

36.    Defendant is a corporation organized in and existing under the laws of the State of Illinois, with its principal place of business located at 4311 N. Ravenswood, Suite 201 in Chicago, Illinois. 60613.

## SUBSTANTIVE ALLEGATIONS

37.    Harry and Dawn Channon were the owners of a condominium unit located at 5109 N. Kenmore Avenue, Unit 1E, in Chicago Illinois, 60640, which was part of the Kenmore Club Condominium Association for several years until April 18, 2016, when the Unit was sold.

38.    On or about February 20, 2016, Cahontas and Elizabeth Vincent (the "Vincents"), as prospective purchasers of the Channons' condominium unit, entered into a real estate contract

9

FILED DATE: 4/16/2019 4:51 PM   2019CH04653

(the "Real Estate Contract") with the Channons. (A copy of the Real Estate Contract is attached hereto as **Exhibit B**).

39.     Pursuant to paragraph 9 of the Real Estate Contract, and according to Section 22.1 of the Act, as sellers, the Channons were required to provide the Vincents, as prospective purchasers, with the disclosure information and documents required by 765 ILCS 605/22.1(a). Failure to provide disclosure documents to a prospective buyer with disclosure documents and/or deficient documents subjects the condo seller to potential liability under Section 22.1 of the Condo Act. (A copy of Section 22.1 of the Condo Act is attached hereto as **Exhibit C**).

40.     The Board of Managers, on behalf of the Association, is required by statute to provide the Section 22.1 disclosure documents to a requesting unit owner. 765 ILCS 605/22.1(a). The Board of Managers commonly designates this duty to a property management company, if one is retained, which is what happened here when the Association retained Westward. 765 ILCS 605/18(a)(5).

41.     On information and belief, Westward has the ability to negotiate its compensation during the bargaining phase of its contractual or management agreement with the Association. As a professional property management business, Westward is a sophisticated party. As such, on information and belief, Westward had an opportunity to bargain for the specific duties it was to assume, and the services it was to provide to Kenmore Club. Westward was aware, or should have been aware, of all the duties it was assuming from the Association because Westward's professional obligations under the Condo Act and the Condo Manager Act include the duties to be knowledgeable of: (i) the Condo Act, (ii) the Illinois Not-for-Profit Corporation Act, (iii) its principal's bylaws, and (iv) any other laws pertaining to community association management. 765 ILCS 605/18.3; 605/18.7(c)(3).

FILED DATE: 4/16/2019 4:51 PM   2019CH04669

42.   Upon information and belief, throughout the entire duration of the events set forth herein, Westward was (and still is) the management Agent for Kenmore Club.

43.   At all relevant times, Westward was the agent specifically designated under Sections 22.1 (b) and (c) for the Association in connection with the service of providing disclosure documents to unit sellers upon demand as part of its management duties for the Association, and charging only a reasonable fee for the cost of providing such information to unit sellers. 765 ILCS 605/22.1 (b), (c).

44.   Property management companies, like Westward, are agents of the Association by virtue of their management contracts or agreements with them.  765 ILCS 605/18.7(b).  On information and belief, as Agent of Kenmore Club, Westward provides financial management and record keeping services, and is thereby authorized to, and in fact does, manage and control the Association's financial documents and records identified under Section 22.1(a)(1)-(9) (*i.e.*, disclosure documents).

45.   The resale process for Kenmore Club requires condo sellers to notify their Association's managing agent, in this case Westward, of the intent to sell their condo unit.  The seller is then required to request directly, and must obtain disclosure documents, from their Association's designated agent, Westward—the party who has assumed the specific statutory duty to provide the seller with Section 22.1 disclosure documents. 765 ILCS 605/22.1(b).

46.   On information and belief, Westward exclusively manages and controls Section 22.1 disclosure documents on behalf of the Association in an electronic database, most of which are only accessible to Westward and its employees.[1]

---

[1] On information and belief, Westward makes the Association's Governing Documents (*i.e.*, Declaration, Bylaws, Articles of Incorporation, Rules & Regulations) available in "real time to all

FILED DATE: 4/15/2019 4:51 PM   2019CH04569

47.    The Channons, and similarly situated condo sellers, rely on Westward to provide them with accurate and comprehensive disclosure documents that comply with the mandates of Sections 22.1(a)(1)-(9) of the Condo Act because Westward is the only party authorized by the Association to manage and provide these documents to them.

48.    On information and belief, the Association is not equipped with the expertise or knowledge of the relevant legal requirements and financial management to adequately provide disclosure documents to sellers—hence, the statutory duty is delegated to Westward, a professional Association Management company. 765 ILCS 605/18(a)(5); (*See* **Exhibit A**).  Even if Plaintiffs were able to obtain disclosure documents from their Association to avoid excessive fees of Westward, Plaintiffs run the risk of receiving deficient disclosure documents.  Plaintiffs would then be subject to potential liability, because it is the *seller* that has a statutory obligation to provide such documents to potential buyers.

49.    As this statutory duty was delegated to, and assumed by Westward, condo sellers, such as the Plaintiffs herein, would not reasonably request these documents from their Association.

50.    Westward provided the Channons with a document entitled "Escrow Document Request Form." (A copy of the Escrow Document Request Form is attached as **Group Exhibit D**). The document is created by Westward and contains the company's name in the letterhead. Westward provided the Channons, and similarly situated condo unit sellers, this document on behalf of the Association.  The Escrow Request Form states in pertinent part:

> If this request is to obtain a **PAID ASSESSMENT LETTER** for a **SALE/TRANSFER of OWNERSHIP**, please fax/email: Cover Sheet, Document Request Form, Credit Authorization Form, Notice of Intent to Sell, Homeowner Information Sheet and Governing Documents Rider (entire package).

_____

homeowners via [its] online portal." However, it is unclear if Westward charges condo owners a fee (separate from Association fees) to access and download these documents in the online portal.

FILED DATE: 4/16/2018 4:51 PM   2018CH04869

Also, please provide estimated closing date: _____**4/18/16**_____ (emphasis in the original) (*See* Group Exhibit D).

51.     The Channons directly notified Westward, the designated Agent for their Association, of their intent to sell by submitting a standard form document entitled "Notice Of Intent To Sell." (*See* Group Exhibit D). The document is created by Westward and contains the company's name in the letterhead. Westward provided the Channons, and similarly situated condo unit sellers, this document on behalf of the Condo Association. The Notice stated an "Anticipated Closing Date" of April 18, 2016. (A copy of the Notice of Intent to Sell is attached as **Group Exhibit D**).

52.     As part and parcel of the above referenced "package," Westward provided the Channons with a standard form document to complete entitled "Document Request Form" (*i.e.*, Order Form) for, among other things, Section 22.1 Disclosure Documents. (A copy of the "Documents Request Form" is attached as **Group Exhibit D**). The Order Form is created by Westward and contains the company's name in the letterhead. Westward provided the Channons, and similarly situated condo unit sellers, this document on behalf of the Association.

53.     Westward also provided the Channons, as part of the "package," a standard form document to complete entitled "Credit Card Authorization Form." (A copy of the "Credit Card Authorization Form" is attached hereto as **Group Exhibit D**). The Authorization Form is created by Westward and contains the company's name in the letterhead. Westward provided the Channons, and similarly situated condo unit sellers, this document on behalf of the Association.

54.     Specifically, Westward charged the Channons $75.00 for a "Condo Questionnaire/Disclosure Statement 22.1" that included providing some, but not all, Section 22.1 disclosure information. Additionally, Westward charged the Channons $150.00 for a "Paid Assessment Letter," and $20.00 for a "Year to Date Income Statement & Budget." In total,

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

Westward charged the Channons Two-Hundred and Forty-Five dollars ($245.00) to provide them with information they had a statutory duty to provide the Vincents, the prospective purchasers of the condominium unit.

55.     Westward, as Agent for and on behalf of the Association, provided the Channons with a "Condominium/Townhouse Disclosure Statement," and attached some, but not all, of the Section 22.1 disclosure documents. Alex Wiseman of Westward Management, Inc. signed the Disclosure Statement as Agent for the Association. (A copy of the "Condominium/Townhouse Disclosure Statement" is attached as **Exhibit E**).

56.     Plaintiffs' statutory obligation under Section 22.1(a) continued up through the date of closing to provide the prospective buyer with the required disclosure documents. In this case, the closing occurred on April 18, 2016.

57.     On or about July 28, 2017, the Channons sent a letter to Westward, wherein they demanded that Westward provide information and/or documentation supporting: (a) "out-of-pocket" costs for providing disclosure documents, (b) a basis for how it determined the amount to charge for these documents, and (c) supporting documentation for the $150.00 charge for the Paid Assessment Letter and/or basis for how it determined the fee. Westward did not respond to the Channons' demand. (A copy of the "Demand Letter" is attached as **Exhibit F**).

58.     Unit sellers, such as Plaintiffs, have a statutory duty to provide prospective purchasers all disclosure documents and statements listed in Section 22.1 of the Act. Nonetheless, Westward prices these documents separately and misleads the unit seller to believe they can cherry pick and choose among a list of disclosure documents to provide prospective purchasers. (*See* **Group Exhibit D**).

59. Although the statute provides only that "[a] reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing the information," Westward's "Document Request Form" has pre-set charges for "each" 22.1 disclosure item—regardless of the length of the document or method of delivery. (*See* Group Exhibit D).

60. The management of disclosure documents occurs, or should occur, on an ongoing basis and well before a condo owner submits a request to Westward. Thus, Section 22.1(c)'s fee restrictions only apply to the cost associated with making those documents *available* to condo owners—for example, the cost of printing or delivery through expedited mail. 765 ILCS 605/22.1(c).

61. Westward's fee of Two-Hundred and Forty-Five dollar ($245.00) for providing the statutorily required Section 22.1 documentation is not a "reasonable fee" covering direct out-of-pocket costs for providing such information. 765 ILCS 605/22.1(c).

62. On information and belief, Westward does not itemize its charges, or otherwise state the basis for how it determines the amount charged for these documents.

63. The Channons and other similarly situated Class members cannot reasonably obtain the necessary documents to sell their unit from any other source but from Westward, and only if they provide Westward their credit card information in the Authorization Form. Plaintiffs are thus beholden to Westward and have no reasonable choice but to pay its excessive and unreasonable fees to obtain the necessary disclosure documents to sell their condominium unit and comply with their own statutory duty under the Condo Act.

64. Westward is essentially using the cost-shifting provision of 765 ILCS 605/22.1(c) to make an unlawful profit. In so doing, Westward has effectively compelled the Channons, and

FILED DATE: 4/16/2019 4:55 PM   2019CH04669

other similarly situated Class members, to pay this excessive and unreasonable fee to sell their condominium units, in violation of the statute and public policy of the State of Illinois.

## CLASS ALLEGATIONS

65. **Class Definition:** Plaintiffs bring this action pursuant to 735 ILCS 5/2-801 on behalf of themselves and a Class of similarly situated individuals, defined as follows:

> All persons who sold or attempted to sell a condominium unit in a condominium association managed by Defendant where the purchaser(s) demanded that seller(s) provide the legally required disclosure information listed in 765 ILCS 605/22.1, compelling the seller(s) to pay Defendant what is supposed to be a "reasonable fee" to obtain this information from Defendant.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

66. **Numerosity:** The exact number of Class members is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Class is likely to consist of hundreds, if not thousands, of individuals due to Defendant's management of a number of condominium associations in the Chicago metropolitan area.[2] Class members can be easily identified through Defendant's records or by other means.

---

[2] *See* one of Westward's websites at https://westward360.com/ which "[o]ffers community association management in Chicago for homeowners, condos, townhomes and co-op associations..." and also "offer[s] management for local Chicago single-unit condos, multi-family properties, and apartment buildings with up to 400 units."

16

FILED DATE: 4/16/2019 4:51 PM 2019CH04669

FILED DATE: 4/16/2019 4:51 PM   2019CH04659

67.    **Commonality and Predominance:** There are several questions of law and fact common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual class members. The common questions of law and fact for Plaintiffs and all Class members include, but are not limited to, whether Defendant's charges of amounts in excess of its "direct out-of-pocket cost[s]" for providing the disclosure information that Plaintiffs were legally obligated to obtain under 765 ILCS 605/22.1 constitutes an unreasonable and statutorily improper fee under Section 22.1 of the Illinois Condominium Property Act:

      A.  In violation of the Illinois Condominium Property Act; and/or

      B.  In violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

68.    **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class, and have retained counsel competent and experienced in complex class action litigation. Plaintiffs have no interest antagonistic to those of the Class, and Defendants has no defenses unique to Plaintiffs.

69.    **Appropriateness:** Class proceedings are also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Further, it would be virtually impossible for the individual members of the Class to obtain effective relief because the damages suffered by individual Class members are likely to be relatively small, especially given the burden and cost of individually conducting the complex litigation necessitated by Defendant's actions.   Even if Class members were able or willing to pursue such individual litigation, a class action would still be preferable due to the fact that a multiplicity of individual actions would likely increase the expense and time of litigation given the complex legal and factual controversies presented in this Class Action Complaint. A class action,

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision by a single Court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

## COUNT I
### (Violation of the Illinois Condominium Property Act)

70.     Plaintiffs restates and incorporates by reference paragraphs 1 through 69 of this Class Action Complaint as paragraph 70 as if fully set forth herein.

71.     Section 22.1 of the Illinois Condominium Property Act provides,

(a) In the event of any resale of a condominium unit by a unit owner other than the developer such owner shall obtain from the Board of Managers and shall make available for inspection to the prospective purchaser, upon demand . . .

(b) The principal officer of the unit owner's association *or such other officer as is specifically designated* shall furnish the above information when requested to do so in writing and within 30 days of the request. 765 ILCS 605/22.1(a), (b).[3]

72.     Section 22.1 (c) further provides,

(c) A *reasonable fee* covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information." 765 ILCS 605/22.1(c).

73.     Kenmore Club specifically designated Westward as its Agent to provide Section 22.1 Disclosure Documents under Section 22.1(b) to the Channons and similarly situated Class members. (*See* Exhibit E).

74.     Property management agents, such as Westward, exercise dominion and control over the Association's disclosure documents and do not disclose their "actual cost" of providing the documents to condo sellers. Therefore, this imbalance of control over disclosure documents provides a basis to find an implied cause of action to protect condo sellers from managing agents that can easily take advantage of sellers under this structure.

---

[3] Emphasis added unless otherwise noted.

18

FILED DATE: 4/16/2019 4:51 PM   2019CH04569

75.   To protect condo sellers and buyers involved in the sale and purchase of condo units, in 1972 the legislature added Section 22, "Full disclosure before sale," to the Condo Act. Subsequently, in 1980 the legislature added Section 22.1, "Resales; disclosures; fees." 765 ILCS 605/22; 605/22.1.

76.   Under Section 22.1(c), Kenmore or its Board of Managers are restricted to charging only a "reasonable fee" covering the direct out-of-pocket costs for providing disclosure documents to condo sellers such as Plaintiffs. 765 ILCS 605/22.1(c). The restriction has the effect of protecting both condo sellers and prospective buyers, by ensuring that sellers are not price gouged and by removing cost-prohibitive barriers to providing potential buyers with the documents to make an informed decision regarding the purchase.

77.   The purpose of the Condo Act is to govern the affairs of Illinois Condo Associations, and establish procedures for the creation, *sale*, and operation of condominiums. 765 ILCS 605/18, *et seq*. The spirit of the Act is to protect the public ("so they know exactly what they're getting into"). (A copy of the Senate Proceedings of 77th Ill. Gen. Assem., Senate Proceedings, June 21, 1972, at 91 is attached as **Exhibit G**).

78.   The Illinois legislative record states that the Condo Act was intended to provide "the ultimate amount of consumer protection." (A copy of the House Proceedings of 83rd Ill. Gen. Assem., House Proceedings, May 26, 1983, at 157 is attached as **Exhibit H**). Speaker Madigan states, "The essence of the Bill [the proposed amendment overhauling the Condo Act] is to provide that regulation of condominiums statewide shall be uniform at the same time that we provide the *ultimate amount of consumer protection*." (*See* **Exhibit H**).

79.   Section 22.1 was enacted on January 1, 1980, to address the resale of condo units. While it is undisputed that disclosure requirements imposed by Section 22 and 22.1 protects

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

potential buyers, the legislative record demonstrates that it was also intended to protect sellers (*i.e.*, condo owners). (A copy of the 83rd Ill. Gen. Assem., House Proceedings, Jul. 2, 1983, at 4 amending the Condo Act to "strengthen[] the rights of unit owners" is attached as **Exhibit I**).

80. Disclosure requirements necessarily protect both sellers and buyers. The prospective buyer is protected from potentially making a bad investment, whereas the condo seller's compliance with the disclosure requirements protects him or her from liability.

81. A plain reading of Section 22.1(c) demonstrates that it was intended to protect sellers, because the fee for obtaining disclosure documents is imposed only on them. 765 ILCS 605/22.1(c). Therefore, the statutory provision to charge only "a reasonable fee" covering the actual cost of producing disclosure documents directly impacts the seller who is statutorily charged with demanding and obtaining the documents for a cost, and may be liable for failing to make them available to potential buyers, or providing deficient disclosure documents.

82. The overarching objective of the Condo Act is uniformity in regulation, while providing the ultimate amount of consumer protection. (*See* **Exhibit H**, at 157). An implied private right of action against property management companies, such as Westward, who are the designated agents of condo associations, by condo sellers can be inferred because the legislative record confirms that Section 22.1 was intended to protect *both* sellers and potential buyers.

83. The Channons are within the Class of persons the Illinois Condominium Act is designed to protect. Plaintiffs are condominium unit sellers who have a statutory duty to provide disclosure documents to prospective buyers pursuant to Section 22.1 of the Condo Act upon selling their units. 765 ILCS 605/22.1(a). Section 22.1(c), when read in conjunction with the Act's legislative history, clearly demonstrates that the legislature was well aware that property management agents may charge excessive fees for their services. As a measure of protection for

the seller from unscrupulous managing agents, and to ensure that the condo seller can fulfill his statutory duty to potential buyers, the legislature imposed a fee restriction for disclosure documents in Section 22.1. Therefore, the Channons are members of the particular class of individuals for which the statute was designed to protect.

84.    Implying a cause of action in favor of condominium sellers against condominium management companies, such as Westward, who are agents of the Association, is consistent with the underlying purpose of Section 22.1: to ensure that the seller can satisfy their statutory obligation to demand and provide prospective buyers with disclosure documents.

85.    Failing to find an implied cause of action against Westward would render the Condo Act useless for all parties involved in the condo resale transaction, as it would preclude both the seller from protection against price gouging, and prevent the prospective buyer from obtaining the information held within the disclosure documents. In addition to harming the seller through price gouging, Westward forces the seller to choose between paying an exorbitant fee and failing to provide the necessary disclosure documents to potential buyers, thus opening themselves to potential liability. This is no real choice at all.

86.    In refusing to abide by Section 22.1(e), Westward is acting contrary to the purpose of the Act. Westward degrades consumer protection for members of the public, specifically condo sellers and prospective buyers, by disrupting the established procedures regulating the sale of condominiums in Illinois that were intended to ensure the fair dispensation of disclosure documents.

87.    Plaintiffs' injury of being the captive victim of Westward's price gouging is precisely the kind of injury that Section 22.1(e) was designed to prevent. The legislative history of the Condo Act demonstrates that the Act was intended to provide the "ultimate consumer

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

protection"—which necessarily includes condo sellers in this protection. Ultimate consumer protection encompasses sellers precisely because Section 22.1 imposes a duty on sellers to obtain disclosure documents from designated managing agents for a cost. If the court were not to find an implied cause of action, Westward could conceivably continue charging the public higher and higher fees without limit. Rather than limiting fees to the direct out-of-pocket cost covering the electronic transmission and/or printing of documents, as the statute demands, Westward is charging $245.00 for this service with no distinction between the actual cost for the method of delivery.

88.    Implying a private cause of action is necessary to effectuate the purpose of the statute because by failing to do so, the public—particularly condo sellers—would be left open to harm and have no recourse to enforce the "reasonable fee" provision in Section 22.1.

89.    Westward's allegedly exorbitant fees for disclosure documents violates public policy of the State of Illinois because condo sellers in Illinois are being forced to pay excessive and unreasonable fees to obtain disclosure documents they have a legal obligation to provide prospective buyers.

90.    The duty to provide disclosure documents is ascribed to the Association and managing agent, interchangeably. The Condo Act does not make a distinction between the duties of the Association and those assumed by its agent because the statute assumes that the duties of the Association are co-extensive with those of its agent.

91.    Section 18(a)(5) of the Condo Act expressly permits professional property management companies, like Westward, to assume the fiduciary and statutory duties of the Association Board of Managers. 765 ILCS 605/18(a)(5) ("the board may engage the services of a manager or a managing agent").

FILED DATE: 4/16/2019 4:51 PM   2019CH04669

92.    Westward chose to assume the statutory duty to *manage* and *provide* disclosure documents to condo sellers, as prescribed under Sections 22.1(a) and (b) of the Condo Act.

93.    The duties of the Principal-Condo Association and that of its Agent-property management company are one and the same. Section 18(g) of the Condo Act defines a "property management company" as,

> [A] person, partnership, *corporation*, or other legal entity *entitled to transact business on behalf of others*, action on behalf of or *as an agent for* a unit owner, unit owners or *association of unit owners* for the *purpose of carrying out the duties, responsibilities, and other obligations* necessary for the day to day operation and management of any property subject to this Act. 765 ILCS 605/18(g).

94.    Conversely, Section 18.3 of the Condo Act states the following,

> The unit owners *association* is responsible for the *overall administration* of the property through its duly elected board of managers . . . The *association* shall have and exercise all powers necessary or convenient to effect any or all of the *purposes for which the association is organized* and to do *every other act not inconsistent with law* which may be appropriate to promote and attain the purposes set forth in this Act or in the condominium instruments. 765 ILCS 605/18.3.

95.    While the Condo Act explicitly authorizes the Association Board of Managers to hire a management agent, such as Westward, and does not place a limit on bargained for benefits under the contract or management agreement, as long as the requirements of the Condo Act are followed, the Board may impose additional rules in its declaration or bylaws. However, the Board of Managers may not take any action that is beyond the authority granted it under the condominium instruments and the Condominium Property Act. 765 ILCS 605/18.4.

96.    Westward's "duties, responsibilities, and obligations" are that of its principal Association—which includes complying with the Condo Act, and any other applicable laws "which may be appropriate to promote and attain the purposes set forth in this Act." 765 ILCS 605/18.3; 605/18(g).

23

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

97.    Property management agents are assuming the very duties that the Condo Act was created to regulate.  By providing the disclosure documents to the Channons, it is evident that Westward has understood from Section 18 that this duty can be assumed by managing agents (presumably as the "such other officer as is specifically designated").  It follows then that, Westward, as Agent of the Association, which has been permitted to assume the statutory duty of the Association, and which has in fact done so, must be held to the same statutory limitations as that of the Association or Board of Managers of charging only a "reasonable fee" covering the "direct out-pocket-cost" for providing the disclosure documents.

98.    Westward is presumed to have prior knowledge of all statutory duties that it assumed by virtue of its contract or agreement with the Kenmore Club and its professional responsibilities under the Condo Act. 765 ILCS 605/18.7(c)(3), 605/18.4. As Westward's business effectively *is* assuming the duties of the Condo Act, there is no conflict between an implied cause of action under Section 22.1(c) and any other statutes.

99.    At all relevant times, Westward was, or should have been, aware at the time it charged Plaintiffs an unreasonable fee to obtain disclosure documents that the Kenmore Club Board of Managers did not have authority to charge more than a "reasonable fee of the direct out-of-pocket costs" for providing disclosure documents to condo sellers.

100.    In Illinois, an agent is liable where he or she takes an active part in violation of some duty the principal owes to a third person.

101.    Westward is an agent of Kenmore Club pursuant to a contract or agreement wherein it assumed the Association's statutory duties under Sections 22.1 (a), (b), and (c) of the Act, and therefore can be held liable for taking an active part in breaching statutory duties owed by its principal (Kenmore Club) to third-party condo sellers.

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

102.    By failing to perform their statutory duty to charge only a "reasonable fee covering the direct out-of-pocket costs" of providing disclosure documents to condo sellers, Westward has taken an active part in violating the duty to charge only a reasonable fee which their principal, the Association, owes to the Plaintiffs.

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Illinois, and certifying the Class defined herein;

B.   Designating the Channons as representative of the Class, and their undersigned counsel as Class Counsel;

C.   Entering Judgment in favor of the Channons and the Class and against Defendant Westward Management, Inc.

D.   Awarding the Channons and the Class all equitable and monetary relief in an amount to be determined at trial, including pre-judgment and post-judgment interest;

E.   Awarding the Channons and the Class any and all actual damages, attorney's fees and costs, including interest thereon, as allowed or required by law; and

F.   Granting all such further relief and other relief as the Court deems just and appropriate.

## COUNT II
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)

103.    Plaintiffs restate and incorporate by reference paragraphs 1 – 102 of this Class Action Complaint as paragraph 103 as if fully set forth herein.

104.    The Illinois Consumer Fraud and Deceptive Business Practices Act prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment,

suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act." 815 ILCS § 505/2.

105.    The Illinois Consumer Fraud and Deceptive Business Practices Act applies to Defendant's unfair acts as described herein because Defendant's unfair acts occurred in the course of trade and commerce, *i.e.* transactions involving the sale of goods or services to consumers.

106.    Westward is a "person" as defined by Section 505/1(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

107.    The Channons and each Class member are "consumers" as defined by section 505/1(e) of the Illinois Consumer Fraud and Deceptive Business Practices Act.

108.    Westward's acts of charging the Channons and similarly situated Class members an unreasonable and excessive fee to produce the necessary Section 22.1 disclosure documents violates the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*) because: (1) Westward's acts are unfair, (2) Westward intended that the Channons and each Class member rely on its unfair acts, (3) Westward's unfair acts occurred in the course of trade or commerce, and (4) Westward's unfair acts proximately caused the Channons' and each Class member's actual damages.

109.    Westward's act of charging the Channons and each Class member an unreasonable and excessive fee to produce the necessary section 22.1 disclosure documents is unfair because it (1) offends public policy, (2) is immoral, unethical, oppressive, and/or unscrupulous, and (3) causes substantial injury to the Channons and each Class member.

110.    Westward's acts offend Illinois' statutorily-defined public policy because they violate the Illinois Condominium Property Act's stated intent that only a "reasonable fee covering

26

the direct out-of-pocket cost of providing [22.1 disclosures] and copying may be charged." 765 ILCS 605/22.1(c).

111.    Westward's acts also offend Illinois' public policy because the Channons and each Class member have no reasonable choice but to obtain the documents from Westward in order to sell their individual condominium units, in exchange for an excessive and unreasonable fee.

112.    Westward's acts are immoral, unethical, oppressive and/or unscrupulous because the Channons and each Class member have no reasonable alternative but to pay Westward's excessive and unreasonable fee to obtain the necessary 22.1 disclosure documents.

113.    Pursuant to the Illinois Condominium Property Act, the Channons and similarly situated Class members are required by law to obtain and disclose the 22.1 disclosure documents to a prospective condominium purchaser to sell their individual condominium units. 765 ILCS 605/22.1(a).

114.    Westward's acts are so oppressive as to leave the Channons and each Class member with no reasonable alternative but to pay Westwards' excessive and unreasonable fees to obtain the necessary Section 22.1 disclosure documents, because the Channons and the Class cannot reasonably obtain the necessary Section 22.1 disclosure documents from any other source but from Westward.

115.    The Channons and each Class member are required to use Westward to obtain the necessary Section 22.1 disclosure documents, and thus have no meaningful choice except to pay Westward's excessive and unreasonable fees. Westward forces the seller to choose between paying an exorbitant fee and failing to provide the necessary disclosure documents to potential buyers, thus opening themselves to potential liability. This is no real choice at all.

FILED DATE: 4/16/2019 4:51 PM   2019CH04569

FILED DATE: 4/16/2019 4:51 PM   2019CH04988

116. The Channons and each Class member cannot obtain the necessary Section 22.1 disclosure documents from Westward without first paying Westward's excessive and unreasonable fees.

117. Westward's acts cause substantial injury to consumers because the Channons and each Class member are forced to pay Westward's excessive and unreasonable fees that is not the "direct out-of-pocket costs of providing such information and copying." 765 ILCS 605/22.1(c).

118. The Channons and each Class member paid Westward's excessive and unreasonable fees under the assumption and in reliance that Westward's fees for producing the necessary Section 22.1 disclosure documents covered and was no greater than Westward's actual "direct out-of-pocket expenses for providing such information and copying." 765 ILCS 605/22.1(c).

119. Westward intended that the Channons and each Class member rely on its unfair acts of charging excessive and unreasonable fees to produce the necessary Section 22.1 disclosure documents because the Principal-Association (Kenmore Club) is required by statute to, and Westward as designated Agent, therefore knew it may only charge a "reasonable fee" covering and not greater than the direct out-of-pocket cost for providing the necessary Section 22.1 disclosure documents to condo sellers. 765 ILCS 605/22.1(c).

120. Westward's unfair acts of charging the Channons and each Class member excessive and unreasonable fees to produce the necessary Section 22.1 disclosure documents occurred in the course of trade and commerce because the production of condominium records in exchange for a fee constitutes trade and commerce.

121. Westward's unfair acts of charging the Channons and each Class member excessive and unreasonable fees to produce the necessary Section 22.1 disclosure documents are the actual

and proximate cause of the Channons' and each Class member's injuries because but for the Westward's unfair acts, the Channons and each Class member would not have had to pay excess and unreasonable fees to obtain the necessary Section 22.1 disclosure documents. 765 ILCS 605/22.1(c).

122.    The Channons and each Class member sustained actual damages due to the Westward's unfair acts because the Channons and each Class member were forced to pay excessive and unreasonable fees to obtain disclosure documents necessary to comply with their statutory duty under Section 22.1 to provide to prospective buyers, 765 ILCS 605/22.1(c).

123.    As a result of Westward's wrongful and unfair conduct in charging an unreasonable and excessive fee to produce Section 22.1 disclosure documents which the Channons and each Class member is effectively compelled by law to obtain for a prospective condominium purchasers, Westward has committed, and continues to commit, unfair acts in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1, *et seq.*).

WHEREFORE, Plaintiffs, individually, and on behalf of all others similarly situated, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Illinois, and certifying the Class defined herein;

B.     Designating the Channons as representative of the Class, and their undersigned counsel as Class Counsel;

C.     Entering Judgment in favor of the Channons and the Class and against Defendant Westward Management;

D.     Enjoining Defendant's illegal conduct alleged herein and ordering disgorgement of any of its ill-gotten gains;

E.     Awarding the Channons and the Class any and all actual, compensatory, and punitive damages to the extent permitted under the Illinois Consumer Fraud and

FILED DATE: 4/16/2019 4:51 PM  2019CH04669

Deceptive Business Practices Act, in addition to their reasonable attorney's fees and costs; and

F.  Granting all such further relief and other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand trial by Jury on any issues triable by a Jury.

FILED DATE: 4/16/2019 4:51 PM   2019CH04928

Dated: April 16, 2019

Respectfully submitted,

Plaintiffs, Harry Channon and Dawn Channon, individually, and on behalf of all others similarly situated

By: /s/ Terrie C. Sullivan
        Counsel for the Plaintiffs and the Putative Class

Richard A. Greenswag, Esq.
GREENSWAG & ASSOCIATES, P.C.
181 Waukegan Rd., Suite 205
Northfield, IL 60093-2700
Tel: (847) 701-2250
Fax: (847) 501-5390
Rgreenswag@greenswaglaw.com

Terrie C. Sullivan, Esq.
Jeffrey C. Blumenthal, Esq. (Atty. I.D. #38847)
Michael D. Richman (Of Counsel)
JEFFREY C. BLUMENTHAL CHARTERED
2970 Maria Avenue, Suite #223
Northbrook, Illinois 60062
Tel: (847) 498-3220   Fax: (847) 498-3221
Terrie@jcblawyer.com
Jeffrey@jcblawyer.com
Michael@jcblawyer.com

30

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

FILED DATE: 4/16/2019 4:51 PM 2019CH04869

# EXHIBIT A



# Association Management

Making life easier for you, Westward360 offers community association management in Chicago for homeowners, condos, townhomes and co-op associations between 10 and 300 units.

Contact Us

Our advantage.

FILED DATE: 4/16/2019 4:51 PM  2019CH04859

# Saving time & protecting your investment.

As a property owner you want to protect and enhance your investment. As a resident, you want your day-to-day to be easy. We get it. Our services can manage every side of your association, without missing a beat.



## Our association management packages.

FILED DATE: 4/16/2019 4:51 PM 2019CH05522

# Financial Management

Let us pay the bills, keep the books, and collect assessments while you call the shots on the day-to-day. Our financial services include:

- Real-time financial reporting
- Bill pay and collections
- Help with budgeting
- Access to maintenance support

# Recurring Maintenance & On-Call Support

When you're dealing with a maintenance issue, you want fast and reliable service. We employ a full suite of Chicago's best service professionals to make it easy to manage your home, rental or association.

- Property inspection and report
- Recurring maintenance calendar
- Access to our entire staff of service experts
- Emergency on-call services available 24/7

# Full-Service Management

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

## Get our full range of property management services at a great value.

- Full financial management
- Property inspection and report
- Recurring maintenance calendar and pricing
- Support from a licensed property manager with a team of assistant property managers and operations specialists
- One association meeting per year
- Access to our entire staff of service experts
- Emergency on-call services available 24/7

## Premium Full-Service Management

### Get a dedicated, day-to-day property management partner.

- Full financial management
- Full property inspection and report
- Recurring maintenance calendar and pricing
- A dedicated property manager
- Full-service operations and maintenance support
- Association/board meetings as needed
- Access to entire staff of service experts
- Emergency on-call services

available 24/7

## Custom Onsite Management

### Get the convenience of an onsite property manager.

- Full or part-time onsite manager
- Full property inspection and report
- Recurring maintenance calendar and pricing
- Support from a licensed property manager
- One association meeting per year
- Access to our entire staff of service experts
- Emergency on-call services available 24/7

## Get started.

Let's get started! Tell us about your property.



Contact Us

FILED DATE: 4/16/2019 4:51 PM   2019CH04669

Association Management - Westward 360

4/16/19, 9:29 AM

## Property Perks

Hey residents, did you know
Westward360 offers exclusive
maintenance deals? Sign up for Property
Perks and get our monthly newsletter
featuring deals on services, such as
painting, HVAC, general handyman work
and more!

Sign up today!





Association Management   About
Rental Management   Contact Us
Buy & Sell   Careers
Rent   Become a Vendor
Property Maintenance

westward 360

800.901.5431

Legal

https://westward360.com/association-management/

Page 8 of 7

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

# EXHIBIT B

14-08-402-016-1-004

dotloop signature verification: www.dotloop.com/my/verification/DL-144833065-10-151U
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

**MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1**



1  **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

2  Buyer Name(s) *[please print]* Cahontas Vincent and Elizabeth Vincent

3  Seller Name(s) *[please print]*   Harry & Dawn Channon

4  **If Dual Agency Applies, Complete Optional Paragraph 31.**

5  **2. THE REAL ESTATE:** Real Estate shall be defined as the property, all improvements, the fixtures and Personal

6  Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the Real Estate

7  with approximate lot size or acreage of Common _____ commonly known as:

8  5109 N Kenmore Ave, 1E, Chicago, IL 60640

9  Address                                City            State          Zip

10 Cook                       1E                    14084020161004

11 County          Unit # (If applicable)      Permanent Index Number(s) of Real Estate

12 **If Condo/Coop/Townhome Parking is included:** # of spaces(s)_____; identified as Space(s) #_____;

13 *[check type]* ☐ deeded space, PIN:_____ ☐ limited common element ☐ assigned space.

14 **3. PURCHASE PRICE:** The Purchase Price shall be $ 197,000 _____. After the payment of

15 Earnest Money as provided below, the balance of the Purchase Price, as adjusted by prorations, shall be paid at

16 Closing in "Good Funds" as defined by law.

17 **4. EARNEST MONEY:** Earnest Money shall be held in trust for the mutual benefit of the Parties by *[check one]*:

18 ☑ Seller's Brokerage; ☐ Buyer's Brokerage; ☐ As otherwise agreed by the Parties, as "Escrowee".

19 Initial Earnest Money of $ 1,000 _____ shall be tendered to Escrowee on or before 3 ___ day(s) after Date

20 of Acceptance. Additional Earnest Money of $ 2,000 _____ shall be tendered by 03/04/2016 _____.

21 **5. FIXTURES AND PERSONAL PROPERTY AT NO ADDITIONAL COST:** All of the fixtures and included Personal

22 Property are owned by Seller and to Seller's knowledge are in operating condition on the Date of Acceptance,

23 unless otherwise stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing,

24 and well systems together with the following items of Personal Property at no additional cost by Bill of Sale at

25 Closing *[Check or enumerate applicable items]*:

| | | | |
|---|---|---|---|
| 26 ☑ Refrigerator | ☑ Central Air Conditioning | ☐ Central Humidifier | ☑ Light Fixtures, as they exist |
| 27 ☑ Oven/Range/Stove | ☐ Window Air Conditioner(s) | ☐ Water Softener (owned) | ☑ Built-in or attached shelving |
| 28 ☑ Microwave | ☒ Ceiling Fan(s) | ☐ Sump Pump(s) | ☑ All Window Treatments & Hardware |
| 29 ☑ Dishwasher | ☑ Intercom System | ☐ Electronic or Media Air Filter(s) | ☑ Existing Storms and Screens |
| 30 ☒ Garbage Disposal | ☐ Backup Generator System | ☐ Central Vac & Equipment | ☐ Fireplace Screens/Doors/Grates |
| 31 ☐ Trash Compactor | ☐ Satellite Dish | ☑ Security System(s) (owned) | ☐ Fireplace Gas Log(s) |
| 32 ☐ Washer | ☐ Outdoor Shed | ☐ Garage Door Opener(s) | ☐ Invisible Fence System, Collar & Box |
| 33 ☐ Dryer | ☑ Planted Vegetation | with all Transmitters | ☑ Smoke Detectors |
| 34 ☐ Attached Gas Grill | ☐ Outdoor Play Set(s) | ☑ All Tacked Down Carpeting → | ☑ Carbon Monoxide Detectors |

35 **Other Items Included at No Additional Cost:**_____

36

37 **Items Not Included:**_____

38

39 Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in

40 operating condition at Possession except:_____

41 A system or item shall be deemed to be in operating condition if it performs the function for which it is

42 intended, regardless of age, and does not constitute a threat to health or safety.

43 **If Home Warranty will be provided, complete Optional Paragraph 34.**

*Buyer Initial* [CV]  *Buyer Initial* [EV]    *Seller Initial* [HC]  *Seller Initial* [DC]
*Address:* 5109 N Kenmore Ave, 1E, Chicago, IL 60640
*Page 1 of 13*                                                                    v6.1

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

dotloop signature verification: www.dotloop.com/my/verification/DL-450313965-10-55U
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2BA47

4/11

44  **6. CLOSING:** Closing shall be on 04/25/2016 _____ or at such time as mutually agreed by the
45  Parties in writing. Closing shall take place at the escrow office of the title company (or its issuing agent) that will
46  issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall be agreed mutually by the Parties.

47  **7. POSSESSION:** Unless otherwise provided in Paragraph 40, Seller shall deliver possession to Buyer at Closing.
48  Possession shall be deemed to have been delivered when Seller has vacated the Real Estate and delivered keys
49  to the Real Estate to Buyer or to the office of the Seller's Brokerage.

50  **8. MORTGAGE CONTINGENCY: If this transaction is NOT CONTINGENT ON FINANCING, Optional Paragraph 36 a) OR**
51  **Paragraph 36 b) MUST BE USED. If any portion of Paragraph 36 is used, the provisions of this Paragraph 8 are NOT APPLICABLE.**
52  This Contract is contingent upon Buyer obtaining a *[check one]* ☐ fixed; ☐ adjustable; *[check one]* ☑ conventional;
53  ☐ FHA/VA (if FHA/VA is chosen, complete Paragraph 37); ☐ other _____ loan for 95 %
54  of the Purchase Price, plus private mortgage insurance (PMI), if required, with an interest rate (initial rate if an
55  adjustable rate mortgage used) not to exceed 4 _____ % per annum, amortized over not less than 30 _____ years.
56  Buyer shall pay loan origination fee and/or discount points not to exceed 0 _____ % of the loan amount. Buyer
57  shall pay usual and customary processing fees and closing costs charged by lender. (Complete Paragraph 35 if
58  closing cost credits apply).

59  Buyer shall make written loan application within five (5) Business Days after the Date of Acceptance; **failure to**
60  **do so shall constitute an act of Default under this Contract.** *[Complete both a) and b)]:*
61  a)  Not later than 03/21/2016 _____ , (if no date is inserted, the date shall be twenty-one (21) days after
62      the Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
63      confirming that Buyer has provided to such lending institution an "Intent to Proceed" as that term is defined
64      in the rules of the Consumer Financial Protection Bureau and has paid all lender application and appraisal
65      fees. If Buyer is unable to provide such written evidence, Seller shall have the option of declaring this
66      Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
67      specified herein or any extension date agreed to by the Parties in writing.
68  b)  Not later than 04/15/2016 _____ , (if no date is inserted, the date shall be sixty (60) days after the
69      Date of Acceptance) Buyer shall provide written evidence from Buyer's licensed lending institution
70      confirming that Buyer has received a written mortgage commitment for the loan referred to above. If Buyer
71      is unable to provide such written evidence either Buyer or Seller shall have the option of declaring this
72      Contract terminated by giving Notice to the other Party not later than two (2) Business Days after the date
73      specified herein or any extension date agreed to by the Parties in writing.

74  **A Party causing delay in the loan approval process shall not have the right to terminate under either of the**
75  **preceding paragraphs. In the event neither Party elects to declare this Contract terminated as of the latter of**
76  **the dates specified above (as may be amended from time to time), then this Contract shall continue in full**
77  **force and effect without any loan contingencies.**

78  **Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or**
79  **closing of Buyer's existing real estate.** Buyer shall be deemed to have satisfied the financing conditions of this
80  paragraph if Buyer obtains a loan commitment in accordance with the terms of this paragraph even though the
81  loan is conditioned on the sale and/or closing of Buyer's existing real estate.

82  **9. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer:
83  *[check one]* ☑ has ☐ has not received a completed Illinois Residential Real Property Disclosure;
84  *[check one]* ☑ has ☐ has not received the EPA Pamphlet, "Protect Your Family From Lead In Your Home";
85  *[check one]* ☑ has ☐ has not received a Lead-Based Paint Disclosure;
86  *[check one]* ☑ has ☐ has not received the IEMA, "Radon Testing Guidelines for Real Estate Transactions";

Buyer Initial [ CV ]  Buyer Initial [ EV ]                    Seller Initial [ HC ]  Seller Initial [ DC ]
Address: 5109 N Kenmore Ave, 1E, Chicago, IL 60640                                          v6.1
Page 2 of 13

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

*dotloop signature verification: ~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~*
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

*[handwritten:] new carpet/paint in hallways special assessment common area association has been paid in full prior to closing*

87    *[check one]* ☑ has ☐ has not received the Disclosure of Information on Radon Hazards.

88    **10. PRORATIONS:** Proratable items shall include without limitation, rents and deposits (if any) from tenants;
89    Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer; and
90    Homeowner or Condominium Association fees (and Master/Umbrella Association fees, if applicable).
91    Accumulated reserves of a Homeowner/Condominium Association(s) are not a proratable item. Seller
92    represents that as of the Date of Acceptance Homeowner/Condominium Association(s) fees are $254.00
93    per month_____ (and, if applicable Master/Umbrella Association fees are $0_____ per 0_____).
94    Seller agrees to pay prior to or at Closing any special assessments (by any association or governmental entity)
95    confirmed prior to the Date of Acceptance. Special Assessment Area or Special Service Area installments due
96    after the year of Closing shall not be proratable items and shall be paid by Buyer. The general Real Estate taxes
97    shall be prorated as of the date of Closing based on 105___% of the most recent ascertainable full year tax bill. All
98    prorations shall be final as of Closing, except as provided in Paragraph 22. If the amount of the most recent
99    ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior freeze or senior
100    deferral, then Seller has submitted or will submit in a timely manner all necessary documentation to the
101    appropriate governmental entity, before or after Closing, to preserve said exemption(s). The requirements of
102    this Paragraph shall survive the Closing.

103    **11. ATTORNEY REVIEW:** Within five (5)___ Business Days after Date of Acceptance, the attorneys for the respective
104    Parties, by Notice, may:
105    a)   Approve this Contract; or
106    b)   Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
107    c)   Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
108       Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
109       modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
110       shall be null and void; or
111    d)   Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
112       declare this Contract null and void and this Contract shall remain in full force and effect.
113    **Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 11 c). If Notice is not**
114    **served within the time specified herein, the provisions of this paragraph shall be deemed waived by the**
115    **Parties and this Contract shall remain in full force and effect.**

116    **12. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** Buyer may conduct at Buyer's expense (unless
117    otherwise provided by governmental regulations) any or all of the following inspections of the Real Estate by
118    one or more licensed or certified inspection services: home, radon, environmental, lead-based paint, lead-based
119    paint hazards or wood-destroying insect infestation.
120    a)   Buyer agrees that minor repairs and routine maintenance items of the Real Estate do not constitute defects
121       and are not a part of this contingency. **The fact that a functioning major component may be at the end of**
122       **its useful life shall not render such component defective for purposes of this paragraph.** Buyer shall
123       indemnify Seller and hold Seller harmless from and against any loss or damage caused by the acts of
124       negligence of Buyer or any person performing any inspection. The home inspection shall cover only the
125       major components of the Real Estate, including but not limited to central heating system(s), central cooling
126       system(s), plumbing and well system, electrical system, roof, walls, windows, doors, ceilings, floors,
127       appliances and foundation. A major component shall be deemed to be in operating condition if it performs
128       the function for which it is intended, regardless of age, and does not constitute a threat to health or safety. If
129       radon mitigation is performed, Seller shall pay for any retest.

*Buyer Initial* [CV]   *Buyer Initial* [ZV]      *Seller Initial* [HC]   *Seller Initial* [DC]
*Address:* 5109 N Kenmore Ave, 1E, Chicago, IL 60640         v6.1
*Page 3 of 13*

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

dotloop signature verification: www.dotloop.com/my/verification/DL-142037056-10-91U
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

130 b) Buyer shall serve Notice upon Seller or Seller's attorney of any defects disclosed by any inspection for which
131     Buyer requests resolution by Seller, together with a copy of the pertinent pages of the inspection reports
132     within <u>five (5)</u>   Business Days <s>ten (10)</s>   calendar days for a lead-based paint or lead-based paint hazard
133     inspection) after the Date of Acceptance. If within <s>ten (10)</s>   Business Days after the Date of Acceptance
134     written agreement is not reached by the Parties with respect to resolution of all inspection issues, then either
135     Party may terminate this Contract by serving Notice to the other Party, whereupon this Contract shall be
136     null and void.

137 c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
138     reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller
139     within <u>five (5)</u>   Business Days after the Date of Acceptance, this Contract shall be null and void. Said Notice
140     shall not include any portion of the inspection reports unless requested by Seller.

141 d) **Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a**
142     **waiver of Buyer's rights to terminate this Contract under this Paragraph 12 and this Contract shall remain**
143     **in full force and effect.**

144 **13. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for an
145 Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10) Business
146 Days after the Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves Notice**
147 **with proof of same to Seller within time specified, this Contract shall be null and void. If Notice is not**
148 **served within the time specified, Buyer shall be deemed to have waived this contingency and this Contract**
149 **shall remain in full force and effect.**

150 **14. FLOOD INSURANCE:** Buyer shall have the option to declare this Contract null and void if the Real Estate is
151 located in a special flood hazard area. **If Notice of the option to declare contract null and void is not given to**
152 **Seller within ten (10) Business Days after the Date of Acceptance or by the time specified in Paragraph 8 b),**
153 **whichever is later, Buyer shall be deemed to have waived such option and this Contract shall remain in full**
154 **force and effect.** Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property
155 Disclosure Act.

156 **15. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** (If applicable) The Parties agree that the terms
157 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any
158 conflicting terms.

159 a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and conditions
160     of the Declaration of Condominium/Covenants, Conditions and Restrictions ("Declaration/CCRs") and all
161     amendments; public and utility easements including any easements established by or implied from the
162     Declaration/CCRs or amendments thereto; party wall rights and agreements; limitations and conditions
163     imposed by the Condominium Property Act; installments due after the date of Closing of general
164     assessments established pursuant to the Declaration/CCRs.

165 b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for all
166     special assessments confirmed prior to the Date of Acceptance.

167 c) Seller shall notify Buyer of any proposed special assessment or increase in any regular assessment between
168     the Date of Acceptance and Closing. The Parties shall have three (3) Business Days to reach agreement
169     relative to payment thereof. Absent such agreement either Party may declare the Contract null and void.

170 d) Seller shall, within five (5) Business Days from the Date of Acceptance, apply for those items of disclosure
171     upon sale as described in the Illinois Condominium Property Act, and provide same in a timely manner, but
172     no later than the time period provided for by law. This Contract is subject to the condition that Seller be able

*Buyer Initial* [CV] *Buyer Initial* [EV]
*Address:* 5109 N Kenmore Ave, 1E, Chicago, IL 60640
*Page 4 of 13*

*Seller Initial* [HC] *Seller Initial* [VC]
v6.1

agreed upon K

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

dotloop signature verification: www.dotloop.com/my/verification/DL-140035565-10-1GTJ
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

173  to procure and provide to Buyer a release or waiver of any right of first refusal or other pre-emptive rights to
174  purchase created by the Declaration/CCRs. In the event the Condominium Association requires the personal
175  appearance of Buyer or additional documentation, Buyer agrees to comply with same.
176  e)  In the event the documents and information provided by Seller to Buyer disclose that the existing
177  improvements are in violation of existing rules, regulations or other restrictions or that the terms and
178  conditions contained within the documents would unreasonably restrict Buyer's use of the premises or
179  would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate, then
180  Buyer may declare this Contract null and void by giving Seller Notice within five (5) Business Days after the
181  receipt of the documents and information required by this Paragraph, listing those deficiencies which are
182  unacceptable to Buyer.  If Notice is not served within the time specified, Buyer shall be deemed to have
183  waived this contingency, and this Contract shall remain in full force and effect.
184  f)  Seller shall not be obligated to provide a condominium survey.
185  g)  Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

186  **16. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's Designated grantee good and
187  merchantable title to the Real Estate by recordable Warranty Deed, with release of homestead rights, (or the
188  appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller
189  (unless otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject
190  only to: covenants, conditions and restrictions of record and building lines and easements, if any, provided they
191  do not interfere with the current use and enjoyment of the Real Estate; and general real estate taxes not due and
192  payable at the time of Closing.

193  **17. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
194  a)  The Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-
195  closing inspection requirement, municipal Transfer Tax or other similar ordinances. Transfer taxes required
196  by municipal ordinance shall be paid by the Party designated in such ordinance.
197  b)  The Parties agree to comply with the reporting requirements of the applicable sections of the Internal
198  Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

199  **18.  TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
200  customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
201  commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by
202  a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance,
203  subject only to items listed in Paragraph 16. The requirement to provide extended coverage shall not apply if the
204  Real Estate is vacant land. The commitment for title insurance furnished by Seller will be presumptive evidence
205  of good and merchantable title as therein shown, subject only to the exceptions therein stated. **If the title**
206  **commitment discloses any unpermitted exceptions or if the Plat of Survey shows any encroachments or other**
207  **survey matters that are not acceptable to Buyer, then Seller shall have said exceptions, survey matters or**
208  **encroachments removed, or have the title insurer commit to either insure against loss or damage that may**
209  **result from such exceptions or survey matters or insure against any court-ordered removal of the**
210  **encroachments.** If Seller fails to have such exceptions waived or insured over prior to Closing, Buyer may elect
211  to take title as it then is with the right to deduct from the Purchase Price prior encumbrances of a definite or
212  ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of Title covering the date of Closing, and
213  shall sign any other customary forms required for issuance of an ALTA Insurance Policy.

214  **19. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
215  condominium (see Paragraph 15) Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat of

*Buyer Initial* _____ *Buyer Initial* _____          *Seller Initial* _____ *Seller Initial* _____
*Address:* 5109 N Kenmore Ave, 1E, Chicago, IL 60640                                              *v6.1*
*Page 5 of 13*

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

dotloop signature verification: www.dotloop.com/my/verification?DL-144832955-10-131U
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

216 Survey that conforms to the current Minimum Standard of Practice for boundary surveys, is dated not more
217 than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor licensed to
218 practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show visible evidence of
219 improvements, rights of way, easements, use and measurements of all parcel lines. The land surveyor shall set
220 monuments or witness corners at all accessible corners of the land. All such corners shall also be visibly staked
221 or flagged. The Plat of Survey shall include the following statement placed near the professional land surveyor's
222 seal and signature: "This professional service conforms to the current Illinois Minimum Standards for a
223 boundary survey." A Mortgage Inspection, as defined, is not a boundary survey and is not acceptable.

224 **20. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the
225 Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by
226 condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
227 earnest money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
228 condemnation award or any insurance payable as a result of the destruction or damage, which gross proceeds
229 Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to repair or replace
230 damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois
231 shall be applicable to this Contract, except as modified by this paragraph.

232 **21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
233 condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real
234 Estate at Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real Estate,
235 fixtures and included Personal Property prior to Possession to verify that the Real Estate, improvements and
236 included Personal Property are in substantially the same condition as of the Date of Acceptance, normal wear
237 and tear excepted.

238 **22. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed for
239 the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be deposited in
240 escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and paid at
241 Closing. When the exact amount of the taxes to be prorated under this Contract can be ascertained, the taxes
242 shall be prorated by Seller's attorney at the request of either Party and Seller's share of such tax liability after
243 proration shall be paid to Buyer from the escrow funds and the balance, if any, shall be paid to Seller. If Seller's
244 obligation after such proration exceeds the amount of the escrow funds, Seller agrees to pay such excess
245 promptly upon demand.

246 **23. SELLER REPRESENTATIONS:** Seller's representations contained in this paragraph shall survive the Closing.
247 Seller represents that with respect to the Real Estate Seller has no knowledge of nor has Seller received any
248 written notice from any association or governmental entity regarding:
249 a) zoning, building, fire or health code violations that have not been corrected;
250 b) any pending rezoning;
251 c) boundary line disputes;
252 d) any pending condemnation or Eminent Domain proceeding;
253 e) easements or claims of easements not shown on the public records;
254 f) any hazardous waste on the Real Estate;
255 g) any improvements to the Real Estate for which the required initial and final permits were not obtained;
256 h) any improvements to the Real Estate which are not included in full in the determination of the most recent tax assessment; or
257 i) any improvements to the Real Estate which are eligible for the home improvement tax exemption.
258 Seller further represents that:

Buyer Initial _____ Buyer Initial _____    Seller Initial _____ Seller Initial _____
Address: 5109 N Kenmore Ave, 1E, Chicago, IL 60640                              v6.1
Page 6 of 13

dotloop signature verification: www.dotloop.com/my/verification/DL-146D3265-10-13TU
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2B4B47

259 *[Initials]* There *[check one]* ☐ is ☑ is not a pending or unconfirmed special assessment
260 affecting the Real Estate by any association or governmental entity payable by Buyer after the date of Closing.
261 The Real Estate *[check one]* ☐ is ☑ is not located within a Special Assessment Area or
262 Special Service Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
263 All Seller representations shall be deemed re-made as of Closing. If prior to Closing Seller becomes aware of
264 matters that require modification of the representations previously made in this Paragraph 23, Seller shall
265 promptly notify Buyer. If the matters specified in such Notice are not resolved prior to Closing, Buyer may
266 terminate this Contract by Notice to Seller and this Contract shall be null and void.

267 **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal
268 holidays. Business Hours are defined as 8:00 A.M. to 6:00 P.M. Chicago time.

269 **25. FACSIMILE OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
270 executing, negotiating, and finalizing this Contract, and delivery thereof by one of the following methods shall
271 be deemed delivery of this Contract containing original signature(s). An acceptable facsimile signature may be
272 produced by scanning an original, hand-signed document and transmitting same by facsimile. An acceptable
273 digital signature may be produced by use of a qualified, established electronic security procedure mutually
274 agreed upon by the Parties. Transmissions of a digitally signed copy hereof shall be by an established, mutually
275 acceptable electronic method, such as creating a PDF ("Portable Document Format") document incorporating
276 the digital signature and sending same by electronic mail.

277 **26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
278 Contract may be terminated by either Party, the following shall be deemed incorporated: "and Earnest Money
279 refunded upon the joint written direction by the Parties to Escrowee or upon an entry of an order by a court of
280 competent jurisdiction."
281 In the event either Party has declared the Contract null and void or the transaction has failed to close as
282 provided for in this Contract and if Escrowee has not received joint written direction by the Parties or such court
283 order, the Escrowee may elect to proceed as follows:
284 a) Escrowee shall give written Notice to the Parties as provided for in this Contract at least fourteen (14) days
285   prior to the date of intended disbursement of Earnest Money indicating the manner in which Escrowee
286   intends to disburse in the absence of any written objection. If no written objection is received by the date
287   indicated in the Notice then Escrowee shall distribute the Earnest Money as indicated in the written Notice
288   to the Parties. If any Party objects in writing to the intended disbursement of Earnest Money then Earnest
289   Money shall be held until receipt of joint written direction from all Parties or until receipt of an order of a
290   court of competent jurisdiction.
291 b) Escrowee may file a Suit for Interpleader and deposit any funds held into the Court for distribution after
292   resolution of the dispute between Seller and Buyer by the Court. Escrowee may retain from the funds
293   deposited with the Court the amount necessary to reimburse Escrowee for court costs and reasonable
294   attorney's fees incurred due to the filing of the Interpleader. If the amount held in escrow is inadequate to
295   reimburse Escrowee for the costs and attorney's fees, Buyer and Seller shall jointly and severally indemnify
296   Escrowee for additional costs and fees incurred in filing the Interpleader action.

297 **27. NOTICE:** Except as provided in Paragraph 32 c) 2) regarding the manner of service for "kick-out" Notices, all
298 Notices shall be in writing and shall be served by one Party or attorney to the other Party or attorney. Notice to
299 any one of the multiple person Party shall be sufficient Notice to all. Notice shall be given in the following manner:
300 a) By personal delivery; or

*Buyer Initial* [signature] *Buyer Initial* [signature]          *Seller Initial* [signature] *Seller Initial* [signature]
Address: 5109 N Kenmore Ave, 1E, Chicago, IL 60640                                        v6.1
*Page 7 of 13*

dotloop signature verification: www.dotloop.com/my/verification/DL-145009565-10-131U
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

301    b)   By mailing to the addresses recited herein by regular mail and by certified mail, return receipt requested. Except
302      as otherwise provided herein, Notice served by certified mail shall be effective on the date of mailing; or
303    c)   By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that the
304      Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is transmitted
305      during non-business hours, the effective date and time of Notice is the first hour of the next Business Day after
306      transmission; or
307    d)   By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient Party's
308      attorney to the sending Party or is shown in this Contract. Notice shall be effective as of date and time of e-mail
309      transmission, provided that, in the event e-mail Notice is transmitted during non-business hours, the effective
310      date and time of Notice is the first hour of the next Business Day after transmission. An attorney or Party may
311      opt out of future e-mail Notice by any form of Notice provided by this Contract; or
312    e)   By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
313      following deposit with the overnight delivery company.

314   **28. PERFORMANCE: Time is of the essence of this Contract.** In any action with respect to this Contract, the Parties
315   are free to pursue any legal remedies at law or in equity and the prevailing party in litigation shall be entitled to
316   collect reasonable attorney fees and costs from the non-prevailing party as ordered by a court of competent jurisdiction.

317   **29. CHOICE OF LAW AND GOOD FAITH:** All terms and provisions of this Contract including but not limited to the
318   Attorney Review and Professional Inspection paragraphs shall be governed by the laws of the State of Illinois and
319   are subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

320   **30. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS initialed by the Parties
321   and the following additional attachments, if any: _____
322   _____

323                **OPTIONAL PROVISIONS (Applicable ONLY if initialed by all Parties)**

324   *[Initials]* [   |   |   |   ] **31. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
325   consented to _____ (Licensee) acting as a Dual Agent in providing
326   brokerage services on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the
327   transaction referred to in this Contract.

328   [   |   |   |   ] **32. SALE OF BUYER'S REAL ESTATE:**
329    a)   **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:
330      1)   Buyer owns real estate (hereinafter referred to as "Buyer's real estate") with the address of:
331   _____
332   Address                          City            State            Zip
333      2)   Buyer *[check one]* ☐ has ☐ has not entered into a contract to sell Buyer's real estate.
334         If Buyer has entered into a contract to sell Buyer's real estate, that contract:
335         a)   *[check one]* ☐ is ☐ is not subject to a mortgage contingency.
336         b)   *[check one]* ☐ is ☐ is not subject to a real estate sale contingency.
337         c)   *[check one]* ☐ is ☐ is not subject to a real estate closing contingency.
338      3)   Buyer *[check one]* ☐ has ☐ has not listed Buyer's real estate for sale with a licensed real estate broker and
339         in a local multiple listing service.
340      4)   If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple listing
341         service, Buyer *[check one]*:

*Buyer Initial* [ CV ] *Buyer Initial* [ EV ]          *Seller Initial* [ HC ] *Seller Initial* [ DC ]
*Address:* 5109 N Kenmore Ave, 1E, Chicago, IL 60640                 *v6.1*
*Page 8 of 13*

docloop signature verification: www.dobloxoscom/sim/wip/dzstdbonlOL-445B02906-10-1310U
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

342    a) ☐ Shall list real estate for sale with a licensed real estate broker who will place it in a local multiple
343        listing service within five (5) Business Days after Date of Acceptance.
344        *[For information only]* Broker:_____
345        Broker's Address:_____ Phone:_____
346    b) ☐ Does not intend to list said real estate for sale.
347  **b) CONTINGENCIES BASED UPON SALE AND/OR CLOSING OF REAL ESTATE:**
348    1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real estate that
349        is in full force and effect as of_____. Such contract should provide for a closing
350        date not later than the Closing Date set forth in this Contract. If Notice is served on or before the date set
351        forth in this subparagraph that Buyer has not procured a contract for the sale of Buyer's real estate, this
352        Contract shall be null and void. If Notice that Buyer has not procured a contract for the sale of Buyer's
353        real estate is not served on or before the close of business on the date set forth in this subparagraph,
354        Buyer shall be deemed to have waived all contingencies contained in this Paragraph 32, and this
355        Contract shall remain in full force and effect. (If this paragraph is used, then the following paragraph **must**
356        be completed.)
357    2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in Paragraph 32
358        b) 1) and that contract is in full force and effect, or has entered into a contract for the sale of Buyer's real
359        estate prior to the execution of this Contract, this Contract is contingent upon Buyer closing the sale of
360        Buyer's real estate on or before_____. If Notice that Buyer has not closed the sale
361        of Buyer's real estate is served before the close of business on the next Business Day after the date set
362        forth in the preceding sentence, this Contract shall be null and void. If Notice is not served as described
363        in the preceding sentence, Buyer shall have deemed to have waived all contingencies contained in this
364        Paragraph 32, and this Contract shall remain in full force and effect.
365    3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in
366        Paragraph 32 b) 1) (or after the date of this Contract if no date is set forth in Paragraph 32 b) 1)), Buyer shall,
367        within three (3) Business Days of such termination, notify Seller of said termination. Unless Buyer, as part
368        of said Notice, waives all contingencies in Paragraph 32 and complies with Paragraph 32 d), this Contract
369        shall be null and void as of the date of Notice. If Notice as required by this subparagraph is not served
370        within the time specified, Buyer shall be in default under the terms of this Contract.
371  **c) SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency,
372    Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:
373    1) If Seller accepts another bona fide offer to purchase the Real Estate while contingencies expressed in
374        Paragraph 32 b) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have_____
375        hours after Seller gives such Notice to waive the contingencies set forth in Paragraph 32 b), subject to
376        Paragraph 32 d).
377    2) Seller's Notice to Buyer (commonly referred to as a 'kick-out' Notice) shall be in writing and shall be served
378        on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such 'kick-out' Notice should
379        be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide such courtesy copies
380        shall not render Notice invalid. Notice to any one of a multiple-person Buyer shall be sufficient Notice to all
381        Buyers. Notice for the purpose of this subparagraph only shall be served upon Buyer in the following manner:
382        a) By personal delivery effective at the time and date of personal delivery; or
383        b) By mailing to the address recited herein for Buyer by regular mail and by certified mail. Notice shall be
384            effective at 10:00 A.M. on the morning of the second day following deposit of Notice in the U.S. Mail; or

*Buyer Initial* [CV] *Buyer Initial* [ZV]                      *Seller Initial* [HC] *Seller Initial* [DC]
*Address:* 5109 N Kenmore Ave, 1E, Chicago, IL 60640                                          v6.1
*Page 9 of 13*

dotloop signature verification: www.notloop.com/my/verification/DL-444D3592-6-12-91U
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

385         c) By commercial delivery overnight (e.g., FedEx). Notice shall be effective upon delivery or at 4:00 P.M.
386           Chicago time on the next delivery day following deposit with the overnight delivery company,
387           whichever first occurs.
388     3) If Buyer complies with the provisions of Paragraph 32 d) then this Contract shall remain in full force and effect.
389     4) If the contingencies set forth in Paragraph 32 b) are NOT waived in writing, within said time period by
390       Buyer, this Contract shall be null and void.
391     5) Except as provided in Paragraph 32 c) 2) above, all Notices shall be made in the manner provided by
392       Paragraph 27 of this Contract.
393     6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney or
394       representative.
395  **d) WAIVER OF PARAGRAPH 32 CONTINGENCIES:** Buyer shall be deemed to have waived the contingencies in
396     Paragraph 32 b) when Buyer has delivered written waiver and deposited with the Escrowee additional earnest
397     money in the amount of $_____ in the form of a cashier's or certified check within the time
398     specified. **If Buyer fails to deposit the additional earnest money within the time specified, the waiver shall be**
399     **deemed ineffective and this Contract shall be null and void.**
400  **e) BUYER COOPERATION REQUIRED:** Buyer authorizes Seller or Seller's agent to verify representations contained
401     in Paragraph 32 at any time, and Buyer agrees to cooperate in providing relevant information.

402  ☐☐☐☐☐ **33. CANCELLATION OF PRIOR REAL ESTATE CONTRACT:** In the event either Party has entered
403 into a prior real estate contract, this Contract shall be subject to written cancellation of the prior contract on or before
404 _____. **In the event the prior contract is not cancelled within the time specified, this**
405 **Contract shall be null and void.** Seller's notice to the purchaser under the prior contract should not be served
406 until after Attorney Review and Professional Inspections provisions of this Contract have expired, been
407 satisfied or waived.

408  ☐☐☐☐☐ **34. HOME WARRANTY:** Seller shall provide at no expense to Buyer a Home Warranty at a cost
409 of $_____ . Evidence of a fully pre-paid policy shall be delivered at Closing.

410  ☐☐☐☐☐ **35. CREDIT AT CLOSING:** Provided Buyer's lender permits such credit to show on the HUD-1
411 Settlement Statement or Closing Disclosure, **and if not, such lesser amount as the lender permits,** Seller agrees to
412 credit $ 4,000 to Buyer at Closing to be applied to prepaid expenses, closing costs or both.

413  ☐☐☐☐☐ **36. TRANSACTIONS NOT CONTINGENT ON FINANCING: IF EITHER OF THE FOLLOWING**
414 **ALTERNATIVE OPTIONS IS SELECTED, THE PROVISIONS OF THE MORTGAGE CONTINGENCY PARAGRAPH 8**
415 **SHALL NOT APPLY [CHOOSE ONLY ONE]:**
416  a) ☐☐☐☐☐ **Transaction With No Mortgage (All Cash):** If this selection is made, Buyer will pay at closing,
417     in the form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the
418     amount of the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the
419     Date of Offer, that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees
420     to verify the above representation upon the reasonable request of Seller and to authorize the disclosure of such
421     financial information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
422     availability of sufficient funds to close. Buyer understands and agrees that, so long as Seller has fully complied
423     with Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether
424     intentional or not, that prevents Buyer from satisfying the balance due from Buyer at closing, shall constitute a
425     material breach of this Contract by Buyer. The Parties shall share the title company escrow closing fee equally.
426     **Unless otherwise provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or**
427     **closing of Buyer's existing real estate.**

Buyer Initial _CV_   Buyer Initial _EV_        Seller Initial _HC_   Seller Initial _DC_
Address: 5109 N Kenmore Ave, 1E, Chicago, IL 60640            v6.1
Page 10 of 13

dotloop signature verification: www.dotloop.com/my/verification/DL-145859954-10-4S1U
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

428   b) ⬜⬜⬜⬜⬜ **Transaction, Mortgage Allowed:** If this selection is made, Buyer will pay at closing, in the
429       form of "Good Funds" the difference (plus or minus prorations) between the Purchase Price and the amount of
430       the Earnest Money deposited pursuant to Paragraph 4 above. Buyer represents to Seller, as of the Date of Offer,
431       that Buyer has sufficient funds available to satisfy the provisions of this paragraph. Buyer agrees to verify the
432       above representation upon the reasonable request of Seller and to authorize the disclosure of such financial
433       information to Seller, Seller's attorney or Seller's broker that may be reasonably necessary to prove the
434       availability of sufficient funds to close. Notwithstanding such representation, Seller agrees to reasonably and
435       promptly cooperate with Buyer so that Buyer may apply for and obtain a mortgage loan or loans including but
436       not limited to providing access to the Real Estate to satisfy Buyer's obligations to pay the balance due (plus or
437       minus prorations) to close this transaction. Such cooperation shall include the performance in a timely manner
438       of all of Seller's pre-closing obligations under this Contract. **This Contract shall NOT be contingent upon**
439       **Buyer obtaining financing.** Buyer understands and agrees that, so long as Seller has fully complied with
440       Seller's obligations under this Contract, any act or omission outside of the control of Seller, whether intentional
441       or not, that prevents Buyer from satisfying the balance due from Buyer at Closing shall constitute a material
442       breach of this Contract by Buyer. Buyer shall pay the title company escrow closing fee. **Unless otherwise**
443       **provided in Paragraph 32, this Contract shall not be contingent upon the sale and/or closing of Buyer's**
444       **existing real estate.**

445   ⬜⬜⬜⬜⬜ **37. VA OR FHA FINANCING:** If Buyer is seeking VA or FHA financing, **required FHA or VA**
446       **amendments and disclosures shall be attached to this Contract.** If VA, the Funding Fee, or if FHA, the Mortgage
447       Insurance Premium (MIP) shall be paid by Buyer and *[check one]* ⬜ shall ⬜ shall not be added to the mortgage loan amount.

448   ⬜⬜⬜⬜⬜ **38. WELL OR SANITARY SYSTEM INSPECTIONS:** Seller shall obtain at Seller's expense a well
449       water test stating that the well delivers not less than five (5) gallons of water per minute and including a bacteria
450       and nitrate test and/or a septic report from the applicable County Health Department, a Licensed Environmental
451       Health Practitioner, or a licensed well and septic inspector, each dated not more than ninety (90) days prior to
452       Closing, stating that the well and water supply and the private sanitary system are in operating condition with no
453       defects noted. Seller shall remedy any defect or deficiency disclosed by said report(s) prior to Closing, provided that
454       if the cost of remedying a defect or deficiency and the cost of landscaping together exceed $3,000.00, and if the
455       Parties cannot reach agreement regarding payment of such additional cost, this Contract may be terminated by
456       either Party. Additional testing recommended by the report shall be obtained at the Seller's expense. If the report
457       recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with a
458       mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract prior to
459       Closing. Seller shall deliver a copy of such evaluation(s) to Buyer not less than ten (10) Business Days prior to
460       Closing.

461   ⬜⬜⬜⬜⬜ **39. WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 12,
462       within ten (10) Business Days after the Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a written
463       report, dated not more than six (6) months prior to the Date of Closing, by a licensed inspector certified by the
464       appropriate state regulatory authority in the subcategory of termites, stating that there is no visible evidence of
465       active infestation by termites or other wood destroying insects. Unless otherwise agreed between the Parties, if the
466       report discloses evidence of active infestation or structural damage, Buyer has the option within five (5) Business
467       Days of receipt of the report to proceed with the purchase or to declare this Contract null and void.

468   ⬜⬜⬜⬜⬜ **40. POST CLOSING POSSESSION:** Possession shall be delivered no later than 11:59 P.M. on the
469       date that is_____days after the date of Closing ("the Possession Date"). Seller shall be responsible for all
470       utilities, contents and liability insurance, and home maintenance expenses until delivery of possession. Seller shall

*Buyer Initial* ⬜ *Buyer Initial* ⬜                *Seller Initial* ⬜ *Seller Initial* ⬜
*Address:* 5109 N Kenmore Ave, 1E, Chicago, IL 60640                         *v6.1*
*Page 11 of 13*

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

dotloop signature verification: www.dotloop.com/my/verification/DL-144805955-10-31U
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

471 deposit in escrow at Closing with_____, *[check one]* ☐ one percent (1%)
472 of the Purchase Price or ☐ the sum of $_____ to be paid by Escrowee as follows:

473 a) The sum of $_____ per day for use and occupancy from and including the day after Closing to
474 and including the day of delivery of Possession, if on or before the Possession Date;

475 b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day after
476 the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate; and

477 c) The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 21 have been
478 satisfied. Seller's liability under this paragraph shall not be limited to the amount of the possession escrow
479 deposit referred to above. Nothing herein shall be deemed to create a Landlord/Tenant relationship between the Parties.

480 **41. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its "As
481 Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with
482 respect to the condition of the Real Estate have been made by Seller or Seller's Designated Agent other than those
483 known defects, if any, disclosed by Seller. Buyer may conduct an inspection at Buyer's expense. In that event, Seller
484 shall make the Real Estate available to Buyer's inspector at reasonable times. Buyer shall indemnify Seller and hold
485 Seller harmless from and against any loss or damage caused by the acts of negligence of Buyer or any person
486 performing any inspection. **In the event the inspection reveals that the condition of the Real Estate is**
487 **unacceptable to Buyer and Buyer so notifies Seller within five (5) Business Days after the Date of Acceptance,**
488 **this Contract shall be null and void. Buyer's notice SHALL NOT include a copy of the inspection report, and**
489 **Buyer shall not be obligated to send the inspection report to Seller absent Seller's written request for same.**
490 **Failure of Buyer to notify Seller or to conduct said inspection operates as a waiver of Buyer's right to terminate**
491 **this Contract under this paragraph and this Contract shall remain in full force and effect.** Buyer acknowledges
492 that the provisions of Paragraph 12 and the warranty provisions of Paragraph 5 do not apply to this Contract.

493 **42. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real
494 Estate by_____
495 Buyer's Specified Party, within five (5) Business Days after the Date of Acceptance. In the event Buyer's Specified
496 Party does not approve of the Real Estate and Notice is given to Seller within the time specified, this Contract shall
497 be null and void. If Notice is not served within the time specified, this provision shall be deemed waived by the
498 Parties and this Contract shall remain in full force and effect.

499 **43. INTEREST BEARING ACCOUNT:** Earnest money (with a completed W-9 and other
500 required forms), shall be held in a federally insured interest bearing account at a financial institution designated
501 by Escrowee. All interest earned on the earnest money shall accrue to the benefit of and be paid to Buyer. **Buyer**
502 **shall be responsible for any administrative fee (not to exceed $100) charged for setting up the account.** In
503 anticipation of Closing, the Parties direct Escrowee to close the account no sooner than ten (10) Business Days
504 prior to the anticipated Closing date.

505 **44. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the
506 Parties entering into a separate written agreement consistent with the terms and conditions set forth herein, and
507 with such additional terms as either Party may deem necessary, providing for one or more of the following *[check applicable boxes]*:

508 ☐ Articles of Agreement for Deed ☐ Assumption of Seller's Mortgage ☐ Commercial/Investment
509 or Purchase Money Mortgage ☐ Cooperative Apartment ☐ New Construction
510 ☐ Short Sale ☐ Tax-Deferred Exchange ☑ Vacant Land

*Buyer Initial* [CV] *Buyer Initial* [EV]  *Seller Initial* [HC] *Seller Initial* [VC]
Address: 5109 N Kenmore Ave, 1E, Chicago, IL 60640    v6.1
Page 12 of 13

FILED DATE: 4/16/2019 4:51 PM  2019CH04869

dotloop signature verification: www.dotloop.com/my/verification?rm=DL-144605965-10-3TU
DocuSign Envelope ID: B050A7DC-38C3-46E2-AC85-D2B04BF2AB47

511  THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED TO THE PARTIES OR THEIR AGENTS.
512  THE PARTIES REPRESENT THAT THE TEXT OF THIS COPYRIGHTED FORM HAS NOT BEEN ALTERED AND IS IDENTICAL TO THE OFFICIAL
513  MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 6.1.

514  02/19/2016
515  Date of Offer                                          DATE OF ACCEPTANCE                           2/20/2016
516  *Cahontas Vincent*  dotloop verified 02/19/16 10:36PM EST DDDI-4513-QBPP-HZAD   *Harry Channon*
517  Buyer Signature                                        Seller Signature                             2/20/2016
518  *Elizabeth Vincent*  dotloop verified 02/19/16 10:33PM EST                       *Dawn Channon*
519  Buyer Signature                                        Seller Signature  0A170FE18B447E...

520  Cahontas Vincent and Elizabeth Vincent                 Harry & Dawn Channon
521  Print Buyer(s) Name(s) *[Required]*                    Print Seller(s) Name(s) *[Required]*

522                                                         5109 N Kenmore                        1E
523  Address                                                Address

524                                                         Chicago                       IL     60640
525  City                    State          Zip             City                          State  Zip

526  cl-vincent@hotmail.com, eaheaton13@gmail.com
527  Phone                   E-mail                         Phone                         E-mail

528                                    *FOR INFORMATION ONLY*

529  Coldwell Banker Honig-Bell        477.010143           Conlon: A Real Estate Company
530  Buyer's Brokerage         MLS #   State License #       Seller's Brokerage      MLS #   State License #

531  14851 Founders Crossing, Homer Glen, IL 60491
532  Address                   City    Zip                  Address                 City    Zip

533  Greg Mucha                471.002365                   Andrew Perkins                  114693
534  Buyer's Designated Agent  MLS #   State License #       Seller's Designated Agent  MLS #  State License #

535                                                         3127337201
536  708-301-4700             Fax                           Phone                           Fax
537  Phone                                                  Phone

538  Greg@GregMucha.com                                     andrew.perkins@conlonrealestate.com
539  E-mail                                                 E-mail

539  Tracy Duval               traceyduval@newellduval.com
540  Buyer's Attorney          E-mail                       Seller's Attorney               E-mail

541
542  Address                   City    State   Zip          Address                 City    State   Zip

543
544  Phone                     Fax                          Phone                           Fax

545
546  Mortgage Company          Phone                        Homeowner's/Condo Association (if any)  Phone

547  Matt Paradis
548  Loan Officer              Phone/Fax                    Management Co./Other Contact            Phone

549  MParadis@guaranteedrate.com
550  Loan Officer E-mail                                    Management Co./Other Contact E-mail

551  Illinois Real Estate License Law requires all offers be presented in a timely manner; Buyer requests verification that this offer was presented.  ☐
552  Seller rejection: This offer was presented to Seller on _____ at _____ A.M./P.M. and rejected on _____
553  at _____ A.M./P.M.  _____ *[Seller Initials]*

554  © 2015, Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or any portion thereof is prohibited. Official form available at
555  www.irela.org (website of Illinois Real Estate Lawyers Association). Approved by the following organizations, September 2015: Illinois Real Estate Lawyers Association · DuPage County Bar Association ·
556  McHenry County Bar Association · Northwest Suburban Bar Association · Will County Bar Association · Belvidere Board of REALTORS® · Chicago Association of REALTORS® · Heartland REALTOR®
557  Organization · Hometown Association of REALTORS® · Illini Valley Association of REALTORS® · Kankakee-Iroquois-Ford County Association of REALTORS® · Mainstreet Organization of
558  REALTORS® · North Shore-Barrington Association of REALTORS® · Oak Park Area Association of REALTORS® · REALTOR® Association of the Fox Valley, Inc. · Three Rivers Association of
559  REALTORS®

*Buyer Initial* [CV] 02/19/2016   *Buyer Initial* [EV] 02/19/16   *Seller Initial* [HC]   *Seller Initial* [DC]

Address: 5109 N Kenmore Ave, 1E, Chicago, IL 60640                                v6.1
Page 13 of 13

FILED DATE: 4/16/2019 4:51 PM  2019CH04869

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

# EXHIBIT C

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Smith-Hurd Illinois Compiled Statutes Annotated
    Chapter 765. Property
        Condominiums
            Act 605. Condominium Property Act (Refs & Annos)

765 ILCS 605/22.1
Formerly cited as IL ST CH 30 ¶ 322.1

605/22.1. Resales; disclosures; fees

Currentness

§ 22.1. (a) In the event of any resale of a condominium unit by a unit owner other than the developer such owner shall obtain from the Board of Managers and shall make available for inspection to the prospective purchaser, upon demand, the following:

(1) A copy of the Declaration, by-laws, other condominium instruments and any rules and regulations.

(2) A statement of any liens, including a statement of the account of the unit setting forth the amounts of unpaid assessments and other charges due and owing as authorized and limited by the provisions of Section 9 of this Act or the condominium instruments.

(3) A statement of any capital expenditures anticipated by the unit owner's association within the current or succeeding two fiscal years.

(4) A statement of the status and amount of any reserve for replacement fund and any portion of such fund earmarked for any specified project by the Board of Managers.

605/22.1. Resales; disclosures; fees, IL ST CH 765 § 605/22.1

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

(5) A copy of the statement of financial condition of the unit owner's association for the last fiscal year for which such statement is available.

(6) A statement of the status of any pending suits or judgments in which the unit owner's association is a party.

(7) A statement setting forth what insurance coverage is provided for all unit owners by the unit owner's association.

(8) A statement that any improvements or alterations made to the unit, or the limited common elements assigned thereto, by the prior unit owner are in good faith believed to be in compliance with the condominium instruments.

(9) The identity and mailing address of the principal officer of the unit owner's association or of the other officer or agent as is specifically designated to receive notices.

(b) The principal officer of the unit owner's association or such other officer as is specifically designated shall furnish the above information when requested to do so in writing and within 30 days of the request.

(c) Within 15 days of the recording of a mortgage or trust deed against a unit ownership given by the owner of that unit to secure a debt, the owner shall inform the Board of Managers of the unit owner's association of the identity of the lender together with a mailing address at which the lender can receive notices from the association. If a unit owner fails or refuses to inform the Board as required under subsection (c) then that unit owner shall be liable to the association for all costs, expenses and reasonable attorneys fees and such other damages, if any, incurred by the association as a result of such failure or refusal.

A reasonable fee covering the direct out-of-pocket cost of providing such information and copying may be charged by the association or its Board of Managers to the unit seller for providing such information.

605/22.1. Resales; disclosures; fees, IL ST CH 765 § 605/22.1

**Credits**

Laws 1963, p. 1120, § 22.1, added by P.A. 81-897, § 1, eff. Jan. 1, 1980. Amended by P.A. 83-1271, § 1, eff. Aug. 30, 1984; P.A. 87-692, § 1, eff. Jan. 1, 1992.

**Formerly** Ill.Rev.Stat.1991, ch. 30, ¶ 322.1.

765 I.L.C.S. 605/22.1, IL ST CH 765 § 605/22.1
Current through P.A. 100-1190 of the 2018 Reg. Sess., and P.A. 101-1 of the 2019 Reg. Sess.

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.

FILED DATE: 4/16/2019 4:51 PM    2019CH04869

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

# EXHIBIT D

FILED DATE: 4/16/2019 4:51 PM 2019CH04869



**WESTWARD**
PROPERTY MANAGEMENT

# *Escrow Document Request Form*

### COVER SHEET

Date: _3/16/16_

To: Westward Management

Email: transitions@westwardmanagement.com

From: Name:
_HARRY CHANNON_

Address:
_5609 N. KENMORE AVE, 1E_

Phone:
_708.217.1838_

Fax: _501 - 5390_
_(847)_ ~~XXXXX~~

Email:
_hchannon @ charlesfranklinlaw.com_

*PLEASE NOTE:*

If this is a request to obtain a **LOAN** for a **PURCHASE/REFINANCE TRANSACTION**, please fax/email: Cover Sheet, Document Request Form and Credit Card Authorization Form.

If this request is to obtain a **PAID ASSESSMENT LETTER** for a **SALE/TRANSFER** of **OWNERSHIP**, please fax/email: Cover Sheet, Document Request Form, Credit Authorization Form, Notice of Intent to Sell, Homeowner Information Sheet and Governing Documents Rider (entire package).

Also, please provide estimated closing date: _4/18/16_

Westward Management | 4311 N Ravenswood Ave #201 | Chicago, IL 60613

FILED DATE: 4/16/2019 4:51 PM   2019CH04869



## DOCUMENT REQUEST FORM

Your request will be processed within five (5) business days of receipt of this request AND payment of fees.

Association Name: _Kenmore Club_

Property Address: _5109 N. Kenmore Ave, 1E_

Seller/Current Owner Name: _Harry Channon + Dawn Channon_

( X ) SALE        (    ) REFINANCE

PLEASE CHECK THE APPROPRIATE BOX BELOW FOR ITEMS THAT YOU REQUIRE. PLEASE NOTE THAT AN ACCOUNT STATEMENT FOR THE UNIT IS AUTOMATICALLY INCLUDED WITH YOUR REQUEST AND DOES NOT NEED TO BE REQUESTED SEPARATELY.

| We Require This Item: | Description | Amount Due |
|---|---|---|
| [ ✔ ] | Paid Assessment Letter | 150.00 |
| [ ] | Declaration | 30.00 |
| [ ] | Bylaws | 20.00 |
| [ ] | Articles of Incorporation | 10.00 |
| [ ] | Rules & Regulations | 15.00 |
| [ ✔ ] | Year to Date Income Statement & Budget | 20.00 |
| [ ] | **Minutes (per quarter) | 5.00 |
| [ ✔ ] | Condo Questionnaire/Disclosure Statement/22.1 (each) | 75.00 |
| [ ✔ ] | Insurance Contact Information | 0.00 |
| [ ] | Super Rush (turnaround of one business day) | 200.00 |
| [ ] | Rush (turnaround of 3 business days) | 150.00 |

**Please indicate how many sets of minutes you require here: _0_

FILED DATE: 4/16/2019 4:51 PM 2019CH04869



## CREDIT CARD AUTHORIZATION FORM

1. Complete this form and send WITH your request for information.
2. A signature of the credit card holder is required on the line where indicated.

*Completion of the Credit Card Authorization Form helps us to protect you, our valued clients, from credit card fraud. All information entered on this form will be kept strictly confidential by Westward Property Management, Inc. We do not share your information with any third party vendor.*

Fax all required documents to: 773-897-0690
OR
Email to: transitions@westwardmanagement.com

I, **Harry Channon** hereby authorize Westward Property Management to charge my credit card account in the amount of $ **245.00**

Type of Credit Card (circle one):

(VISA)   MASTERCARD   AMERICAN EXPRESS   DINER'S CLUB   DISCOVER

Card Number [4] [0] [0] [3]~[4] [4] [7] [8]~[4] [4] [0] [9]~[9] [2] [3] [6]

Expiration Date: [ 1] [0]~[ 1] [8]   CVC Code (last 3 digits on the back): [0] [0] [2]

Signature: **HCh**

Printed Name: **HARRY CHANNON**

Credit Card Billing Address: **5109 N. Kenmore Ave 1E**

City: **Chicago,**

State: **IL**

Zip: **60640**

Telephone: **708-217-1838**

Westward Property Management | 129 E Calhoun St | Woodstock, IL 60098

FILED DATE: 4/16/2019 4:51 PM 2019CH04869



**WESTWARD**
PROPERTY MANAGEMENT

## NOTICE OF INTENT TO SELL

Homeowner Association Name: __Kenmore Club__

C/O Westward Management
4311 N Ravenswood Ave #201
Chicago, IL 60613
Phone: (800) 901-5431

**Attention: Property Manager**

In compliance with the established procedures of the above referenced homeowner association, the undersigned owner(s) of unit number __5109, 1E__ hereby serve notice that I (we) have offered said unit for (sale)/lease to: __Cahontas + Elizabeth Vincent__

Enclosed please find:
1. One copy of the Notice of Intent to Sell Form filled out and signed by the seller;
2. One copy of the sales contract, signed by both seller and purchaser;
3. One copy of the Incoming Homeowner Information Sheet filled out by the purchaser;
4. Governing Documents Rider to be signed by the purchaser.
5. Anticipated Closing Date: __4/18/16__
6. Deposit (if applicable) made payable to the homeowner association as per Rules and Regulation. All payments must be made by money order or cashier check. All payments made otherwise will be returned. For information on the moving deposits please contact your Property Manager.

Incomplete packets will be returned to the seller or their representative. A Paid Assessment Letter will not be issued without the complete packet (all applicable forms, deposits, and fees).

*Although State law allows thirty (30) days for the processing of this information, normal processing occurs within 5 business days once the COMPLETED PACKET has been received. Services provided within 72 hours are considered RUSH and are billed at a premium rate of $150.00. Any documents requested for the NEXT BUSINESS DAY will be billed the SUPER RUSH rate of an additional $200.00. If the association has the RIGHT OF FIRST REFUSAL, the processing of the documents are dependent on the Board of Directors and priority and express options are not available.*

Owner Signature: _____
Print Name: __HARRY CHANNON__
Date: __3-16-16__

MAR/21/2016/MON C6:38 AM                    FAX No.                        P. 002



GOVERNING DOCUMENTS RIDER

_Kenmoc Club_ Association

By my signature below, I attest that I have both received and read the Rules &
Regulations (if applicable), and the Declaration/bylaws of the
Association. I have understood them and I will fully comply with these rules.

A community can be thought of as a small town. The Board President is the
equivalent of the Mayor; the Association is equivalent of the law enforcement
agency, and the Assessments can be thought of as taxes to pay for the maintenance,
repairs and improvements to the community.

In a well-run community, it is necessary to have Rules and Regulations to protect
the quality of life of the residents. Without clear guidelines for the behavior of its
residents, a community is likely to deteriorate in safety, appearance and property
value.

The Rules and Regulations have been designed to insure that your community will
continue to be safe, beautiful and enjoyable place to live as well as a solid
investment for each property owner.

_Elizabeth Vincent & Catlontas Vincent_
Owner/Tenant Name

_Elizabeth Oneil_
Owner/Tenant Signature

_3.81.2016_
Date

_April 19, 2016_
Prospective Move-in Date

Westward Management, 4,430 N. Ravenswood Ave. #200 | Chicago, IL 60613

FILED DATE: 4/16/2019 4:51 PM   2019CH04669

MAR/21/2016/MON 06:38 AM                    FAX No.                        P. 003

FILED DATE: 4/16/2019 4:51 PM 2019CH04869

FORM WM-IMF-123013

**WESTWARD**
RESIDENTIAL MANAGEMENT

## HOMEOWNER INFORMATION FORM
(PLEASE PRINT)

| Community Name: | Kenmare Club | | Unit Number: 1E |
|---|---|---|---|

### OWNER INFORMATION

| First Name | Last Name | | |
|---|---|---|---|
| Vincent | Elizabeth | A | Mr. ☐ Ms. ☑ Mrs. ☐ |
| Vincent | Cahontas | L | Mr. ☐ Ms. ☑ Mrs. ☐ |

| Home Address (if different from unit/community address) | | Home Telephone | Cellular Telephone |
|---|---|---|---|
| N/A | | 708·829·7744 | 708·829·7744 |

| City | State | Zip Code | |
|---|---|---|---|

| Email | | Email | |
|---|---|---|---|
| eaheaton13@gmail.com | | cl-vincent@hotmail.com | |

### TENANT INFORMATION (IF APPLICABLE)

| Tenant Name | | | |
|---|---|---|---|
| N/A | | | |

### PET INFORMATION

| Name | | | |
|---|---|---|---|
| N/A | | | |

### VEHICLE INFORMATION

| Make/Model | | | |
|---|---|---|---|
| N/A | | | |

| Name of Insurance Agency | Agent Name | Agent Telephone |
|---|---|---|
| MVP Insurance Agency | Grant Thompson | 708-460-6183 |
| Policy Number | Effective Date | Expiration Date |
| 118172959 | April 18, 2016 | 4/18/2017 |

| Name of Local Friend or Relative (not residing with Owner) | Relationship | Home Telephone | Cellular Telephone |
|---|---|---|---|
| Marybeth Kaczmarek | Mother | 708·906·2687 | 708·906·2687 |
| Jeff Heaton | brother | 708·508·3746 | — |

Return completed form to:
WESTWARD RESIDENTIAL MANAGEMENT
Address
City, State, Zip
Telephone (xxx)xxx-xxxx Fax (xxx)xxx-xxxx

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

# EXHIBIT E

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

## CONDOMINIUM/TOWNHOUSE DISCLOSURE STATEMENT

The following statements are provided by the Board of Managers of the __Kenmore Club__ Condominium Association as required by 765 ILCS 605/22.1 (Illinois Condominium Act), a copy of which is attached hereto.

1.  Governing documents are available in real time to all homeowners via Westward Management's online portal. Pursuant to statue, a seller must forward these documents to the perspective purchaser.

2.  The monthly assessment for Unit __5109-1B__ is $ __253.86__ . As of the date of this disclosure and through the end of the current month, the Association is owed and asserts a lien on the subject unit for any unpaid common expense assessments and related charges. Any amount due will be noted in the Paid Assessment Letter. The Association has no other liens on the unit in question.

3.  Other than as set forth in the current year's budget, the Association's Board of Managers has not authorized any capital expenditures in the current fiscal year, and the Board has not authorized any capital expenditures in the next two succeeding fiscal years. However, the Association's building was first constructed in __2002__, and significant capital expenditures for maintenance, repair, restoration and replacement of deteriorated common element facilities may be required in the coming years. Whether any capital expenditures will be made within the next three years is unknown at this time, as is the amount of any such capital expenditures.

4.  A) Amount of reserve for replacement fund: $ __23,004.80__

    B) A statement for such fund earmarked for any specified project by the Board of Managers.
    _____ None _____

5.  See statement of financial condition for fiscal year 2016.

6.  There are no pending judgments against the Association. From time to time, the Association is a defendant in mortgage foreclosure lawsuits against unit owners and or a plaintiff in assessment collection lawsuits against unit owners. The Association is not a party to any other lawsuits.

7.  A certificate evidencing all insurance maintained by the Association on the common elements and related appurtenances may be obtained by contacting IRC at 847.498.6600.

8.  The Association does not inspect individual units and takes no responsibility for improvements or alterations made by individual unit owners within individual units or to limited common elements. The Association has no knowledge or any improvements or alterations made to the subject unit (or to the limited common elements that serve that unit) that are not in compliance with the Association's Declaration and Rules.

__Kenmore Club__                          __Alex Wiseman__
NAME OF THE ASSOCIATION                   NAME OF AGENT

__4311 N. Ravenswood, Ste. 201, Chicago, IL 60613__
ADDRESS OF AGENT

__3/31/2016__
DATE                                      SIGNATURE OF AGENT

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

# EXHIBIT F

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

Harry and Dawn Channon
3626 North Damen Ave. #1
Chicago, IL 60618

July, 28, 2017

**Via Certified Mail, Return Receipt Requested**
Westward Management, Inc.
4311 N. Ravenswood Ave., Suite 201
Chicago, IL 60613
Attn: Gwen Kaminskas

> RE: **$245.00 charge by Westward Management, Inc. for processing and copying in connection with the sale of Condominium Unit # 1E 5109 N. Kenmore Ave., Chicago, Illinois 60640- Harry and Dawn Channon to Elizabeth & Cahontas Vincent, as Purchasers**

Dear Ms. Kaminskas:

On April 18, 2016, my wife and I closed on the sale of condominium unit #1E at 5109 N. Kenmore Ave, Chicago, Illinois, 60640 which is part of the Kenmore Club Condominium Association. Prior to the sale, I submitted a preprinted form titled Document Request Form to Westward Management, Inc., for me to obtain the documents and information that a non-developer seller is required to provide a prospective purchaser upon the resale of a condominium unit pursuant to Section 22.1 of the Illinois Condominium Property Act (760 ILCS 605/22.1).

We were charged $245 for the information and documents that we needed in order to consummate the closing of our condominium unit. I am attaching a copy of the preprinted Document Request Form that was submitted.

Please consider this letter as my **demand, that within fourteen (14) days, you provide me with the following information and/or documentation:**

    (a) What Section 22.1 documents and/or information were provided as part of Document Request and the direct out of pocket cost to Westward for providing those documents and/or information and the back-up supporting documentation for Westward's out of pocket costs.

    (b) Please also provide the basis for how Westword determined the amount we would be charged for those documents.

FILED DATE: 4/16/2019 4:51 PM  2019CH04869

(c) If different from (a) above, the back-up supporting documentation for the $150.00 charge for the "Paid Assessment Letter" and/or the basis indicating how Westword determined that I should be charged $150.00 for the Paid Assessment Letter.

I thank you in advance for your courtesy and prompt attention to this letter.

Very Truly Yours,

Harry O. Channon

Enclosure

FILED DATE: 4/16/2019 4:51 PM 2019CH04869



**WESTWARD**
PROPERTY MANAGEMENT

## DOCUMENT REQUEST FORM

Your request will be processed within five (5) business days of receipt of this request AND payment of fees.

Association Name: _Kenmore Club_

Property Address: _5109 N. Kenmore Ave, 1E_

Seller/Current Owner Name: _Harry Channon + Dawn Channon_

( X ) SALE      (   ) REFINANCE

PLEASE CHECK THE APPROPRIATE BOX BELOW FOR ITEMS THAT YOU REQUIRE. PLEASE NOTE THAT AN ACCOUNT STATEMENT FOR THE UNIT IS AUTOMATICALLY INCLUDED WITH YOUR REQUEST AND DOES NOT NEED TO BE REQUESTED SEPARATELY.

| We Require This Item: | Description | Amount Due |
|---|---|---|
| [ ✓ ] | Paid Assessment Letter | 150.00 |
| [   ] | Declaration | 30.00 |
| [   ] | Bylaws | 20.00 |
| [   ] | Articles of Incorporation | 10.00 |
| [   ] | Rules & Regulations | 15.00 |
| [ ✓ ] | Year to Date Income Statement & Budget | 20.00 |
| [   ] | **Minutes (per quarter) | 5.00 |
| [ ✓ ] | Condo Questionnaire/Disclosure Statement/22.1 (each) | 75.00 |
| [ ✓ ] | Insurance Contact Information | 0.00 |
| [   ] | Super Rush (turnaround of one business day) | 200.00 |
| [   ] | Rush (turnaround of 3 business days) | 150.00 |

**Please indicate how many sets of minutes you require here: _0_

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

# EXHIBIT G

FILED DATE: 4/16/2019 4:51 PM 2019CH04869

June 21, 1972
HB 3779

1.    3779, Senator Graham.  Senator Graham.

2.    SENATOR GRAHAM:

3.        Yes, I am ready. Mr. President and members of the Senate,

4.    House Bill 3779, introduced by Representative Regner, had

5.    quite a bit of publicity and quite a bit of acceptance and is

6.    considered the truth-in-selling bill of condominium property.

7.    When it came over to the Senate, I talked to Senator Neistein

8.    and there was some discussion as to the homebuilders' version

9.    of this particular bill.  We adopted a rather comprehensive

10.    amendment that satisfies them.  And in effect what this does,

11.    this bill will indicate that those...in many cases the elderly

12.    people who are purchasing condominiums with the intent of

13.    spending the rest of their life in the condominiums that they

14.    have offered to them by the condominium owners a comprehensive

15.    outline of operation of the condominium unit, operating budget

16.    spelling out what maintenance fees are and why they are, a floor

17.    plan of the apartment purchase so they know exactly what they're

18.    getting into, I think this is an admirable piece of legislation.

19.    I ask for a favorable roll call.

20.    PRESIDENT:

21.        Is there any discussion?  Secretary will call the roll.

22.    PRESIDING SECRETARY:  (Mr. Fernandes)

23.        Arrington, Baltz, Berning, Bidwill, Bruce, Carpentier,

24.    Carroll, Cherry, Chew, Clarke, Collins, Coulson, Course,

25.    Davidson, Donnewald, Dougherty, Egan, Fawell, Gilbert, Graham,

26.    Groen, Hall, Harris, Horsley, Hynes, Johns, Knuepfer, Knuppel,

27.    Kosinski, Kusibab, Latherow, Laughlin, Lyons, McBroom, McCarthy,

28.    Merritt, Mitchler, Mohr, Neistein, Newhouse, Nihill, O'Brien,

29.    Ozinga, Palmer, Partee, Rock, Romano, Rosander, Saperstein,

30.    Savickas, Smith, Soper, Sours, Swinarski, Vadalabene, Walker,

31.    Weaver.

32.    PRESIDENT:

33.        Donnewald, aye.  Hynes, aye.  On that question, the yeas are

6-21-72

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

PRESIDENT:

1.     The Senate will come to order.  Prayer by the Reverend

2.    Joseph Ferriera.  Pastor of the Zenobia Baptist Church at

3.    Pawnee.  Pastor Ferriera.

4.    PASTOR FERRIERA:

5.     (Prayer)

6.    PRESIDENT:

7.     Reading of the Journal.  Moved by Senator Kosinski that

8.    the reading of the Journal be dispensed with.  All in favor

9.    signify by saying aye.  Contrary minded.  Motion prevails.

10.   Committee reports.

11.   SECRETARY:

12.     Senator Donnewald, Chairman of Assignment of Bills,

13.   assigns the following to committee:  Appropriations,

14.   House Bill 4133 and 4685.  Revenue, House Bills 3801,

15.   4408 and 4621.  Senator Lyons, Chairman of the Appropriations

16.   Division reports out the following bills:  House Bills

17.   No. 4211, 4215, 4294, 4374, 4468 and 4463 with the

18.   recommendation Do Pass.  House Bills 4102, 4159, 4210; 4293,

19.   4452 and 4457 with the recommendation Do Pass as Amended.

20.   PRESIDENT:

21.    Messages from the House.

22.   SECRETARY:

23.    Message from the House by Mr. Selcke, Clerk.

24.    Mr. President, I am directed to inform the Senate that

25.   the House of Representatives has passed bills of the following

26.   titles and the passage of which I am instructed to ask the

27.   concurrence of the Senate, to wit:  and there's about ten bills.

28.   PRESIDENT:

29.    All right.  Further messages.

30.   SECRETARY:

31.    Message from the House by Mr. Selcke, Clerk.

32.    Mr. President, I am directed to inform the Senate that

33.   the House of Representatives has adopted the following preamble

and joint resolution and the adoption of which I am instructed

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

# EXHIBIT H

FILED DATE: 4/16/2019 4:51 PM  2019CH04869

STATE OF ILLINOIS
83RD GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

53rd Legislative Day                                        May 26, 1983

the Order on page 2, the Order of Special Order of
Business, Subject Matter - State and Local Government
Administration. House Bill on Third Reading, House Bill
1666. Read the Bill. Out of the record. House Bill 1862.
Read the Bill, Mr. Clerk."

Clerk O'Brien: "House Bill 1862, a Bill for an Act to provide for
the uniform regulation of condominiums. Third Reading of
the Bill."

Speaker Yourell: "Speaker Madigan."

Madigan: "Mr. Speaker, Ladies and Gentlemen of the House, I will
speak to this Bill and then Mr. Vinson will also speak to
the Bill in support of its passage. This Bill would
provide for a uniform system of condominium regulation in
Illinois. The essence of the Bill is to provide that
regulation of condominiums statewide shall be uniform at
the same time that we provide the ultimate amount of
consumer protection. The Bill has been drafted in
cooperation with the Commission on uniform laws. It has
the full support of the Illinois Board of Realtors, the
Illinois State Bar Association and the Chicago Bar
Association. I think that given the breadth and depth of
support for this legislation, that we have come forward
with a Bill which would adequately answer the problems that
have developed in the area of condominium regulation over
these past years and I would recommend an 'aye' vote."

Speaker Yourell: "Is there discussion? The Gentleman from
DeWitt, Representative Vinson."

Vinson: "Thank you, Mr. Speaker. I, too, would request an 'aye'
vote on House Bill 1862 which does, as the Speaker said,
rewrite the Illinois Condominium Law. It affects the
creation, management, and protection of purchasers' rights
in the condominium statute. The Bill is supported by the
Illinois Realtors' Association. It deals in a very

157

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

STATE OF ILLINOIS
83RD GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

53rd Legislative Day                                    May 26, 1983

balanced fashion with the critically important preemption question. Essentially, the core of how it deals with the preemption question is that, in essence, new condominium units will be exclusively regulated by this statute. However, existing condominium units which have been regulated in the past by local ordinance will continue to be regulated by those local ordinances. There are some exceptions in the exclusive preemption, the exclusive regulation by the state on this field and they are important exceptions which create the appropriate balance between state and local interests. The home rule unit may regulate in the effect of additional disclosure for condominium conversion. As everyone knows conversions are a major issue in certain portions of the state, and for that purpose, for that reason, home rules...home rule units will be permitted to regulate in that area. Escrow accounts for the purpose of protecting the purchasers in regard to common elements are also left to the home rule units. Existing codes will not apply to new units. I think finally, I would make the point that there is increased consumer protection under this...under this Bill in the area of warranties, in the area of protecting the purchaser in the right to cancel a contract, in the disclosure on conversions and in the termination of sweetheart contracts. With those introductory comments, I would ask for your support for this Bill. I believe it is a very balanced Bill, and I believe it will stimulate construction in this field."

Speaker Yourell: "Further discussion? Minority Leader Representative Daniels."

Daniels: "Mr. Speaker, Ladies and Gentlemen of the House, I join the previous two speakers in supporting this very fine Bill. It has been worked out over a number of months, and

FILED DATE: 4/16/2019 4:51 PM 2019CH04869

STATE OF ILLINOIS
83RD GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

53rd Legislative Day                                    May 26, 1983

as a matter of fact, a number of years, in very extensive
review and negotiations. I think the legislation, as
presented to you, contains the elements for a very fine
condominium Act and condominium law in this state. I think
it's progressive. I think it serves our constituency well
with the consumer protection that's listed in the Bill.
Upon further study, the Bill gets better and better, and I
think you'll find that it's one that you'll readily accept
and will be accepted by your constituency and I ask for
your favorable support."

Speaker Yourell: "Representative Greiman."

Greiman: "Wonder if Mr. Vinson would yield for a question or
two."

Speaker Yourell: "Gentleman indicates he'll yield."

Vinson: "For a question."

Speaker Yourell: "For a question."

Greiman: "Is there some question whether he'll yield?"

Speaker Yourell: "Yes, you...proceed."

Greiman: "Yes, there's a question?"

Speaker Yourell: "No, proceed. If you want to ask Mr. Vinson a
question, proceed."

Greiman: "Oh, thank you, Sir. Okay, do I understand it that
communities on conversion condominium declarations, in
other words, the notice to the tenants and the public
notice that a converter gives, that those communities still
have a right to go beyond and add items that are not in the
statute, is that correct?"

Vinson: "That is correct."

Greiman: "So that communities will be able to add on additional
items. For example, the City of Chicago, just as an
example, acquires or...or allows, or no, requires that a
high rise condominium converter provide the information as
to how much it will cost a...an owner to get into the

159

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

STATE OF ILLINOIS
83RD GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

53rd Legislative Day                              May 26, 1983

common elements. But, in any event, Mr...to the Bill. The purpose of the Bill is to bring uniformity to condominium development and conversion, and often I have heard them say on the floor of this House, 'Well, we need this because it's so difficult...we've a patchwork...a patchwork of...of laws, condominium laws, and we can't go from one place to another because Evanston has one law, Skokie has another, Park Ridge may have another,' and on and on and on. Well, the truth is that people who do taping of walls, electricians, carpenters, those communities have different building code requirements, and so what we are hearing is the lawyers are saying, 'We don't want to go from community to community.' Now, I think lawyers are almost as smart as people who do construction work, almost, and if the construction worker can go from community to community and look at their laws, then I bet you the lawyers could probably do it. I think this Bill is just a little short, a little short on consumer protection that I would like to see it...see. It's going to pass and I am going to try and amend it in the Senate, if it's possible, and I would...I would just commend to you, to this Body, that this could be in better shape for a condominium...for consumer...the benefit of consumers, and I would certainly...I think the Bill should be held, but I am...know that one should not fool around with the inevitable."

Speaker    Yourell: "Representative    Topinka,    Topinka. Representative Ebbesen."

Ebbesen: "Mr. Speaker, I move the previous question."

Speaker Yourell: "Gentleman...the previous question has been moved. All in favor, say 'aye'. Opposed, 'no'. The 'ayes' have it. The previous question has been moved. Representative Vinson to close."

Vinson: "Mr. Speaker, I think we have had a thorough airing of

161

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

STATE OF ILLINOIS
83RD GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

53rd Legislative Day                              May 26, 1983

    this issue. I would just make the one additional point,
that building codes and housing codes, as long as they
apply to all units of construction are not preempted by
this, provide many of the...address many of the concerns
that Mr. Greiman just mentioned and, in addition, there are
a host of other remedies in this statute to protect the
consumer in the area of warranties and his ability to
cancel a contract for his protection. And for those
reasons and because this is a most balanced Bill, I would
ask for the passage of House Bill 1862."

Speaker Yourell: "Question is, 'Shall this Bill pass?' All those
in favor will vote 'aye'. Those opposed will vote 'no'.
The voting is open. To explain his vote, Representative
Mautino."

Mautino: "I would like to explain my vote only if I can see
Representative Vinson and maybe he could nod. I had my
light on during the discussion and I'm looking for an
answer. On Amendment #1 to the Bill, I believe that you
implement double taxation both at the local, at the
individual unit and the common property or the recreational
unit. Is that still in the Bill? I'm sorry, Amendment #2.
Is it still in the Bill where the taxpayer pays for their
own unit and a percentage of the common recreational unit.
Does that apply as well to the recreational areas, not only
in condominium, but in...in, like the common elements for
anywhere at all that they are paying both of them? Well,
we have an interesting concept here with Amendment #2, one
where the property owner not only pays their own taxation,
but when they buy the property, that's what I'm asking.
Just nod your head 'yes' or 'no' on the Amendment. Do they
pay twice? With the common element supposedly in their
taxation when they buy the unit? That's all I'm asking.
Just nod 'yes' or 'no'. That is not the situation, there

162

FILED
4/16/2019 4:51 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH04869
4715595

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

# EXHIBIT I

FILED DATE: 4/16/2019 4:51 PM 2019CH04869

STATE OF ILLINOIS
83RD GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

78th Legislative Day                                    July 2, 1983

    favor say 'aye', opposed 'nay', and the Motion prevails.
And the House does not... moves that the House do not adopt
the First Conference Committee Report on Senate Bill 310,
and a Second Conference Committee is requested and will be
appointed. Senate Bill 313, Slape. Out of the record.
Senate Bill 434, Karpiel... or, Levin. Are you ready? Are
you ready? Alright. The Gentleman from Cook,
Representative Levin, on Senate Bill 434."

Levin: "Mr. Speaker, Ladies and Gentlemen of the House, I move
that the House adopt the First Conference Committee Report
on Senate Bill 434. This Conference Committee Report,
which was adopted unanimously by the conferees, amends the
Condominium Property Act to do basically four things.
First of all, it clarifies various language in the
Condominium Act that has been the subject of litiga...
needless litigation. Secondly, it strengthens the rights
of unit owners and clarifies the authority of condominium
associations. Thirdly, it contains a double taxation
provision. You may recall we passed House Bill 84 relating
to double taxation. That Bill, unfortunately, does not
cover condominiums. And fourthly, this condominium... this
Report provides a mechanism for clearing up defective
declarations. This proposal contains what was in a number
of Bills which were considered in Committee and which,
unfortunately, were just not called on the floor of the
House which had been worked over at length by the Judiciary
Committee. These include Senate Bills 418, 432, of course
434, 436 and 671. This package has been endorsed by the
Illinois Realtors' Association, the Homebuilders', the
condominium associations. It's also been reviewed and
okayed by Chicago Title and Trust Company and the mortgage
bankers. As somebody who does, in fact, represent
condominium associations, I think the... what's included in

4

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

STATE OF ILLINOIS
83RD GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

78th Legislative Day                                    July 2, 1983

here are a number of reforms that are going to save money and are badly needed. I, at this point, urge the adoption of Conference Committee Report #1."

Speaker Matijevich: "A Calendar announcement."

Clerk O'Brien: "Supplemental Calendar #2 is being distributed."

Speaker Matijevich: "Representative Levin has moved the adoption that we do adopt the First Conference Committee Report on Senate Bill 434. The Gentleman from DeWitt, Representative Vinson... or, Representative Piel from Vinson's chair."

Piel: "Will the Gentleman yield?"

Speaker Matijevich: "Yes, he is... does. Proceed."

Piel: "Representative Levin, basically what the First Conference Committee Report is doing is taking the package of the five condominium Bills and putting them into the one Conference Committee. Correct?"

Levin: "That's correct. The Bills, as they were amended on the floor of the House."

Piel: "Is there anything else besides those five or six... the five Bills in question?"

Levin: "Absolutely not."

Piel: "Now, I know that the... the realtors, you know, had some questions in reference to some of the Bills. What is their position on the Conference Committee Report right now?"

Levin: "The realtors... The Illinois Realtors' Association supports the Conference Committee Report. They have endorsed, you know, the underlying Bills. In fact, I have a leaflet right here in which they expressly endorsed, you know, each of the Bills that now makes up this part of the package; 418, 432, 434, 436 and 671."

Piel: "Thank you very much."

Speaker Matijevich: "Representative Levin has moved that the House do adopt the First Conference Committee Report on Senate Bill 434. Those in favor signify by voting 'aye',

5

STATE OF ILLINOIS
83RD GENERAL ASSEMBLY
HOUSE OF REPRESENTATIVES
TRANSCRIPTION DEBATE

FILED DATE: 4/16/2019 4:51 PM   2019CH04869

78th Legislative Day                                    July 2, 1983

those opposed by voting 'no'. This is final passage, and this requires 60 votes. Board is open. Those in favor will signify by voting 'aye', opposed by voting 'no'. Have all voted? Have all voted who wish? Clerk will take the record. On this question, there are 107 'ayes', no 'nays', and the House does adopt the First Conference Committee Report on Senate Bill 434. Representative McPike. Representative McPike."

McPike: "Change the Speaker to 'present'."

Speaker Matijevich: "Record the Speaker as 'present'. Take the record. On this question, there are 109 'ayes', no 'nays', 1 answering 'present', and the House does adopt the First Conference Committee Report on Senate Bill 434. And this Bill, having a Constitutional Majority, is hereby declared passed. Senate Bill 599. The Gentleman from Cook, Representative Terzich."

Terzich: "Yes, Mr. Speaker. I move that we concur with the First Conference Committee on Senate Bill 599, with the Senate concurring in House Amendments 1 and 3. This Amendment provided that the State Fire Marshal's Office would continue the program for localities of less than 10,000, providing grants in case there was no federal money being provided to furnish fire equipment to communities that have been previously served by the Department of Conservation, and I would move that we concur with... "

Speaker Matijevich: "Representative Terzich has moved that the House do adopt the First Conference Committee Report on Senate Bill 599. The Gentleman from Adams, Representative Mays."

Mays: "Thank you. Will the Gentleman yield, please?"

Speaker Matijevich: "Indicates he will. Proceed."

Mays: "Who's this going to go through? Didn't we have a... some questions as far as the Department of Conservation versus

6