# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HARRY CHANNON and DAWN CHANNON, individually and on behalf of all others similarly-situated ) ) ) ) Plaintiffs, ) ) v. ) ) WESTWARD MANAGEMENT, INC., ) ) Defendant. ) | No. 19-cv-05522<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Harry and Dawn Channon (the "Channons") have brought this putative class action against Defendant Westward Management, Inc. ("Westward"), alleging that Westward violated the Illinois Condominium Property Act, 765 ILCS 605/22.1(c), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, by charging fees for condominium owners looking to sell their properties to obtain documents that Illinois law requires them to provide prospective buyers. The action was originally filed in Illinois state court but Westward removed it here. The Channons now seek to have the case remanded to state court. (Dkt. No. 14.) For the reasons that follow, the Channons' motion is granted.

## BACKGROUND

On April 16, 2019, the Channons filed their complaint against Westward in the Circuit Court of Cook County, Chancery Division. They attempted to serve Westward on May 7, 2019 with the assistance of the Cook County Sheriff's Office, which left a copy of the summons and complaint at the Chicago address listed for Westward's registered agent. A Westward employee working at the reception desk, Laz Estrada, accepted service.

In July 2019, Westward retained counsel. One of Westward's attorneys, Krista Stoumbos, emailed the Channons' attorney, Terrie Sullivan, on July 9 to inform her that Stoumbos had been assigned to the matter. Sullivan responded by informing Stoumbos that she wanted to schedule a phone call to discuss the case. The attorneys scheduled a call for the next day, July 10. During that call, Sullivan asked when Westward's counsel would be filing an appearance in the matter. Stoumbos responded that she would be filing an appearance in the next week and indicated that she would need additional time to answer or otherwise plead on behalf of her client. In a follow-up email confirming the substance of their call, Sullivan also attached an appearance filed by her co-counsel in the matter, Liz Al-Dajani.

Sullivan and Stoumbos spoke again on July 18, 2019 when they ran into each other at court after a hearing in a different matter. Sullivan asked Stoumbos whether she had filed an appearance in the present action, and Stoumbos replied that she had not because she was waiting for authorization from her client. The next day—72 days after service was delivered at the address listed for Westward's registered agent—the Channons moved for default judgment due to Westward's failure to appear or file a responsive pleading. On July 25, Westward filed a motion to quash service of process. In its motion, Westward argued that service was ineffective because the Westward employee who accepted service was not authorized to do so. Included as exhibits to the motion were two declarations, one from Estrada and one from David Westveer, Westward's registered agent. Westveer stated in his declaration that he never received a copy of the summons and complaint. And while Estrada acknowledged receiving the summons and complaint on May 7, he stated that he did not give Westveer those documents on that day.

At the default judgment hearing on July 29, 2019, Westward's counsel agreed to accept service in open court and withdrew Westward's motion to quash. In exchange, the Channons

2

withdrew their motion for default judgment. However, the Channons did not concede that the initial May 7 service was improper. The Agreed Order entered that day stated: "Defendant's counsel to accept service of process as of July 29, 2019." (Mot. to Remand, Ex. J, Dkt. No. 14-11.) Furthermore, the order gave Westward until August 28, 2019, to file a responsive pleading. Instead of filing a responsive pleading, Westward filed a notice of removal to this Court on August 15 under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). (Dkt. No. 1.)

## DISCUSSION

The Channons argue that this action must be remanded to state court for three reasons. First, they contend that Westward's notice of removal was untimely because it was filed 102 days after Westward received a copy of the summons and complaint. Second, the Channons argue that Westward engaged in conduct that evinced an intent to litigate this action in state court and therefore waived its right to remove. Finally, the Channons argue that this Court lacks diversity jurisdiction under CAFA because Westward is a citizen of Illinois. This Court addresses each of the Channons' contentions in turn.

### I. Timeliness of Removal

According to the Channons, they properly served Westward at the address of its registered agent on May 7, 2019. Even if that initial service was ineffective, the Channons contend that the removal clock started running on July 10, 2019, at the latest, because Westward received notice of the lawsuit when its counsel received a copy of the additional appearance filed by Al-Dajani, one of the Channons' counsel. And because Westward filed its notice of removal on August 15, 2019, the Channons assert that both possible dates of service are outside the 30-day removal window. On the other hand, Westward argues that it only received formal service of process at the July 29, 2019 hearing before the state court and its notice of removal was therefore timely.

Under 28 U.S.C. § 1446(b), "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." The Supreme Court has held that the 30-day removal clock "is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from the service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). In reaching that conclusion, the Supreme Court rejected the "receipt rule" whereby a defendant's time to remove begins once the defendant has received a copy of the initial pleading even in the absence of formal service. *Id.* at 349, 356.

When an attempted service of process occurs before the action is removed to federal court, state service of process rules govern. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). A corporation may be served in Illinois by leaving a copy of the summons and complaint with the corporation's registered agent or "any officer or agent of the corporation found anywhere in the state." *MB Fin. Bank, N.A. v. Ted & Paul, LLC*, 990 N.E.2d 764, 774 (Ill. App. Ct. 2013). But "for service of process on a corporation to have been properly made upon an agent of the defendant, the agent must have had actual authority to accept service on behalf of the corporation." *Id.* at 775. Thus, "a challenge to or denial of agency within the corporate service context can call the ultimate issue" of the propriety of service into question. *Id.*

Westward contends that the original May 7 service of process was ineffective because Estrada did not have actual authority to accept service on behalf of Westward. Indeed, Estrada submitted a declaration stating that he "was never trained or designated by Westward to receive service of summons and complaints on Westward's behalf." (Mot. to Remand, Ex. I ¶ 4, Dkt. No.

4

14-10.) While he acknowledged receiving process, Estrada stated that he "did not understand the legal import of service of process" and he "did not deliver a copy of the Summons and Complaint to David Westveer," Westward's registered agent. (*Id.* ¶¶ 6–7.) Similarly, Westveer confirmed that Estrada was "a mere employee of Westward," who worked at the reception desk and "was never trained or designated to receive process on Westward's behalf." (Mot. to Remand, Ex. H ¶¶ 6, 9, Dkt. No. 14-9.) Thus, given the evidence that Estrada did not have actual authority to accept service on Westward's behalf, Westward cannot be deemed to have received service of process on May 7.

Yet the Channons contend that even if service was not made on May 7, the removal clock began running on July 10 when the Channons' counsel, Sullivan, sent Westward's counsel a copy of Al-Dajani's appearance in the action as an additional counsel for the Channons. The Channons contend that under 28 U.S.C. § 1446(b)(3), the 30-day removal clock can be triggered by the defendant's mere receipt of "other papers" that are part of state court proceedings. However, the Channons' reliance on § 1446(b)(3) is misplaced because that subsection only "comes into play 'if the case stated by the initial pleading is not removable.'" *Fultz v. Target Corp.*, 28 F. Supp. 3d 783, 784 (N.D. Ill. 2014) (quoting 28 U.S.C. § 1446(b)(3)). Put differently, § 1446(b)(3) applies where grounds for removal are not apparent from the initial pleading but are only supplied at some later point by "an amended pleading, motion, order or other paper." 28 U.S.C. § 1446(b)(3); *see also Ayotte v. Boeing Co.*, 316 F. Supp. 3d 1066, 1071 (N.D. Ill. 2018).

While the Channons contest the removability of the action, they do not contend that Al-Dajani's appearance supplies any grounds for removal not present in the complaint. *See Gross v. FCA US LLC*, No. 17 C 4889, 2017 WL 6065234, at *2 (N.D. Ill. Dec. 7, 2017) ("To trigger the 30-day removal clock under Section 1446(b)(3), the defendant must receive a pleading or other

5

litigation paper that affirmatively and unambiguously reveals that the predicates for removal are present." (internal quotation marks omitted)). Nor does Westward contend that its basis for removal comes from any document other than the complaint. Indeed, Westward's notice of removal cites only the complaint in arguing the propriety of removal. Because the Channons do not include the appearance itself but only the email attaching the appearance as an exhibit to their motion, the Court cannot discern whether the appearance provided any new facts putting Westward on notice that the complaint was removable. *Id.* (stating that the § 1446(b)(3) inquiry is limited to "examining the contents of the clock-triggering pleading or other litigation paper"). Consequently, Westward's receipt of Al-Dajani's appearance did not serve to trigger its time for removal. As of July 10, the removal clock had not yet begun to run.

Only on July 29, 2019, when Westward accepted service of process in open court, did Westward's time to remove begin to run. To the extent the Channons argue that Westward acceded to the propriety of service as of May 7 by withdrawing its motion to quash, their argument is belied by the state court's Agreed Order, which stated unequivocally that Westward accepted service as of July 29, 2019. Thus, Westward's removal clock began to run on that date. And Westward's notice of removal was timely because it was filed on August 15, 2019, which was within the 30 days of July 29, 2019.

## II. Waiver of Right to Remove

The Channons also argue that Westward waived any objections to removal by its conduct in state court, which they claim evinced an intent to proceed in that forum. The Seventh Circuit has held that a district court should not remand on the basis of waiver except for "extreme circumstances," such as where "the suit is fully tried before the statutory period has elapsed and the defendant then files a petition for removal." *Rothner v. City of Chicago*, 879 F.2d 1402, 1416

6

(7th Cir. 1989). Yet the Seventh Circuit's decision was based on language in 28 U.S.C. § 1447(c) addressing the procedures on a motion to remand that has since been deleted by an amendment to the statute. *Radaszewski v. Garner*, No. 01 C 9551, 2002 WL 31430325, at *3 (N.D. Ill. Oct. 21, 2002). Nonetheless, the Seventh Circuit has not revisited the issue and "most district courts in this Circuit have continued to follow *Rothner* and have held that filing motions to dismiss or taking other preliminary actions in state court does not constitute waiver of the right to remove." *Perez v. Air & Liquid Sys. Corp.*, 223 F. Supp. 3d 756, 760 (S.D. Ill. 2016). Some district courts, however, have interpreted the amended § 1447(c) language to allow waiver of the right to removal where a party evidenced an intent to litigate the merits in state court. *E.g.*, *Ellis v. Coventry Capital I, LLC*, No. 08 cv 3083, 2008 WL 4396349, at *4 (N.D. Ill. Sept. 24, 2008); *Radaszewski*, 2002 WL 31430325, at *3. For example, the court may find a waiver where a defendant has filed a motion to dismiss or asserted a counterclaim in state court. *Ellis*, 2008 WL 4936349, at *4.

For present purposes, this Court need not take a position on the correct reading of the amended statute. Even if it is possible for a defendant to waive its right to removal through its conduct in state court, Westward's conduct before the state court did not evidence any intent to litigate there. Instead, the only action Westward took before the state court was to challenge service of process. Its motion went not to any issue of the merits but rather to the state court's ability to exercise power over Westward. *See Murphy Bros.*, 526 U.S. at 350 ("In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant."). The state court could only exercise power over Westward when it accepted service in open court on July 29, 2019 and withdrew its motion to quash service of process. *See MB Fin. Bank*, 900 N.E.2d at 775.

After accepting service, Westward took no further action before the state court and instead filed its notice of removal just two weeks later. The Court is not persuaded by the Channons' claim that Westward's request for leave to file a responsive pleading on or before August 28, 2019, was a representation to the state court that Westward would be litigating the action there. Rather, Westward simply made a routine scheduling request and, presumably, used that time to consider its options. What matters is that Westward ultimately did not file a responsive pleading before the state court but instead timely removed to this Court. Thus, the Court concludes that Westward did not take any action that showed an intent to litigate the matter in state court.[1] For that reason, the action cannot be remanded based on Westward's purported waiver of its right to remove.

### III. Minimal Diversity Under CAFA

Finally, the Channons contend that this action must be remanded to state court because there is not minimal diversity between the parties as required by CAFA. CAFA gives federal district courts jurisdiction over class actions where the amount in controversy exceeds $5,000,000 and there is minimal diversity among the parties such that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014). As the party seeking removal, Westward bears the burden of establishing federal jurisdiction. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Hertz Corp. v. Friend*, 559 U.S.

---

[1] The Channons also suggest that Westward forfeited its right to contest waiver of its right to remove by failing to respond to the Channons' waiver argument in its response brief. This Court disagrees. While the issue is not directly addressed in the argument section of its brief, Westward nonetheless stated clearly in the background section (along with a supporting declaration) that Westward's counsel never made any representation to the Channons or the state court that Westward would litigate the merits of the case in state court.

77, 96–97 (2010). Ultimately, the removing party must establish the facts determining federal jurisdiction by a preponderance of the evidence. *Ill. Bell Tel. Co. v. Global NAPs Ill., Inc.*, 551 F.3d 587, 590 (7th Cir. 2008). Moreover, the removal statute should be construed narrowly and any doubts should be resolved in favor of the plaintiff's choice of forum in state court. *Id.*

Here, the Channons argue that CAFA's minimal diversity requirement is not met because Westward, like the Channons, is a citizen of Illinois. Under 28 U.S.C. § 1332(c)(1), a corporation is deemed to be a citizen of the state in which it was incorporated and of the state where it has its principal place of business. There is no dispute that Westward is a citizen of Delaware because that is the state in which it was incorporated. But the Channons argue that Westward is also a citizen of Illinois because its principal place of business is in Chicago. On the other hand, Westward contends that minimal diversity exists because its principal place of business is in Denver, Colorado, rather than Chicago.

A corporation's principal place of business refers to the corporation's "nerve center," which is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 92–93. A corporation can only have a single principal place of business. *Id.* at 93. Generally, that will be the place where "the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 93.

The Channons' primary evidence showing that Westward's principal place of business is in Chicago are records filed with both the Illinois and Colorado Secretaries of State listing the same Chicago address as the corporation's principal office. (*See* Mot. to Remand, Exs. A, M, Dkt. Nos. 14-2, 14-14.) However, the Supreme Court has held that representations concerning a

9

corporation's principal address in corporate filings are not, without more, "sufficient proof to establish a corporation's 'nerve center.'" *Hertz*, 559 U.S. at 97. *But see Malamed v. First W. Capital Mgmt. Co.*, No. CV16-07735 JAK (PJWx), 2017 WL 1393023, at *3 (C.D. Cal. Feb. 24, 2017) (noting that the *Hertz* Court did not conclude that a statement in a corporation's public filing should be given no weight, "particularly where the party is taking a position that is inconsistent with what it told a government agency"). The Channons also point to Westward's LinkedIn profile, which represents that Westward is headquartered in Chicago and shows that all of Westward's employees are based out of Chicago. (*See* Mot. to Remand, Exs. N, O, P, Dkt. Nos. 14-15, 14-16, 14-17.) But again, the Supreme Court has recognized that there will be certain situations where "the bulk of the company's business activities visible to the public" take place in one state, "while its top officers direct those activities" in another. *Hertz*, 559 U.S. at 96. Despite being a somewhat anomalous result, the corporation's nerve center is deemed to be located in the latter state. *Id.*[2]

Of course, it is Westward, not the Channons, who has the burden of persuading this Court that jurisdiction exists because it is the party seeking removal. As its main proof that its principal place of business is in Denver, Westward attaches declarations from four individuals who are Westward's sole officers and shareholders. (Opp'n to Mot. to Remand, Exs. 3–6, Dkt. Nos. 19-3, 19-4, 19-5, 19-6.) Those declarations are largely identical in substance. They attest that two of Westward's officer-shareholders are Colorado citizens and the other two are California citizens.

---

[2] In addition, the Channons note that it appears that Westward has merged with another corporation to form a new company known as Westward360, Inc. ("Westward360"). Westward360 was incorporated in Illinois and therefore is an Illinois citizen. It also shares the same registered agent as Westward, Westveer, and lists the same Chicago address for its principal office that Westward listed in its corporate filings. At the same time, the Channons acknowledge that Westward360 is not named as a party in this case. For that reason, this Court will not consider Westward360 in the minimal-diversity analysis.

While the officer-shareholders acknowledge that they sometimes work out of Westward's Chicago office, they state that they spend most of their time working out of the Denver office "[d]ue to geographical reasons." (*E.g.*, Opp'n to Mot. to Remand, Ex. 3 ¶¶ 9–11.) Thus, the officer-shareholders state that Denver is Westward's corporate management office because that is the location where they make the majority of business decisions concerning Westward.

Westward argues that its four officer-shareholders' declarations conclusively establish that Westward's principal place of business, or nerve center, is in Denver under the factors set out in *Lambs Farm International, Inc. v. Northern Insurance Co. of New York*, No. 02 C 6055, 2003 WL 260683 (N.D. Ill. Feb. 6, 2003).[3] There, the district court stated that where it is difficult to ascertain a corporation's headquarters, courts can look to several factors including: "(1) where important decisions are made; (2) where the corporation's general counsel, directors, officers and shareholders are located; (3) where the corporation is funded; and (4) where the corporation's primary bank account exists." *Id.* at *2. Westward claims that these factors show that its Denver office is its principal place of business because the majority of important decisions are made in Denver due to its geographic proximity to the officer-shareholders and because its outside funding came entirely from its four officer-shareholders, two of whom live in Colorado.

Yet this Court is not convinced that Westward has carried its burden of showing by a preponderance of evidence that its principal place of business is in Colorado. In particular, the Court finds that the conclusory and threadbare statements in the declarations leave open many

---

[3] *Lambs Farm* was decided prior to the Supreme Court's decision in *Hertz*, adopting the "nerve center" test for determining a corporation's principal place of business. The Channons criticize Westward's reliance on caselaw predating *Hertz*, and this Court does question the continuing vitality of that caselaw. At the same time, *Hertz* expressly adopted and expanded the "nerve center" test as applied in the Seventh Circuit, citing *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986). *Hertz*, 559 U.S. at 92. Thus, this Court believes that pre-*Hertz* caselaw is at least instructive in determining a corporation's principal place of business.

pertinent questions. *See Pool v. F. Hoffman La-Roche, Ltd.*, 386 F. Supp. 3d 1202, 1220 (N.D. Cal. 2019) (rejecting conclusory statements made in removing defendant's declaration). For example, although the officer-shareholders state that the majority of business decisions are made in Denver, they provide no specificity as to the nature and type of those decisions. However, it is not enough that the majority of business decisions are made in a particular location. Rather, *Hertz* requires courts to determine whether the business decisions relate to the direction, control, and coordination of the corporation. *See Hertz*, 559 U.S. at 96. Westward's declarations provide this Court no insight into the decisionmaking occurring in Denver. That leaves open the possibility that Westward is simply aggregating minor day-to-day tasks occurring in Denver even though the major decisions relating to the direction and control of the corporation occur in Chicago.

Furthermore, despite the fact that two officer-shareholders are California citizens, Westward provides no details regarding their role in the corporation. *See Pool*, 386 F. Supp. 3d at 1220 ("Without an understanding of what each director or officer actually does for [the removing defendant] as a practical matter, where the nerve center of the company is cannot be determined.") But *Hertz* recognizes that a situation like this one, where a corporation divides its "command and coordinating function among officers who work at several different locations, perhaps communicating over the internet," is a hard case. *Hertz*, 559 U.S. at 95–96. Thus, further details regarding the officer-shareholders are necessary for Westward to carry its burden. It may be the case that the California officer-shareholders have greater responsibility for the management of the company and thus the location where they make their decisions should be accorded more weight in the analysis.

The lack of detail is particularly concerning given that each officer-shareholder concedes that they also work out of Westward's Chicago office. Given that such information concerning the

officer-shareholders' business decisions is uniquely within Westward's knowledge and easily could have been provided in connection with its opposition to remand, the Court is left with the suspicion that further detail may have been withheld because it would not have been helpful to Westward's position. Similarly, despite its incantation of the factors in *Lambs Farm*, Westward noticeably leaves one of the factors unaddressed—the location of the corporation's primary bank account. Again, that detail could have easily been supplied to this Court and its absence is perhaps telling.

Westward has the burden to come forward with competent proof to persuade this Court by a preponderance of the evidence that its principal place of business is in Denver rather than Chicago. Yet Westward tries to carry its burden with four declarations that leave open ample room for this Court to doubt that there is minimal diversity between the parties. Because that doubt must be construed in favor of the Channons' chosen forum, this Court finds that it lacks subject-matter jurisdiction over this suit and remands the action to state court.

## CONCLUSION

For the foregoing reasons, the Channons' motion to remand (Dkt. No. 14) is granted. This action is remanded to the Circuit Court of Cook County, Illinois, Chancery Division.

ENTERED:

Dated: March 13, 2020

_____
Andrea R. Wood
United States District Judge